SCRIPPS *v.* CRAWFORD.

' 123   173|
  125   544|

  123   173
f126   257

  123   173
127    12

  123   173
s81ᴺᵂ1098

1. SALE—GOOD WILL—ALLOWANCE FOR INTEREST—USURY.

An agreement of a surviving partner, upon purchase of the interest of the deceased partner, to allow the estate, in addition to one-half of the value of the property, one-half of the net profits of the business for five years, "as interest * * * and as compensation for the good will," is not usurious, in the absence of evidence that either party understood that an unlawful rate of interest was contemplated.

2. DEBTOR AND CREDITOR — PREFERENCES — CORPORATIONS — ASSIGNMENT OF STOCK.

Shares of stock in a corporation in the hands of one who paid value for them, or of one to whom they were assigned as security for a debt of the principal stockholder, will not be subjected to the lien of a judgment against the latter upon evidence merely that the corporation was formed and the shares issued and assigned the day before the judgment was taken, and all of the debtor's property subject to execution turned over to the corporation; the transaction amounting, in the absence of collusion, to a lawful preference of creditors.

3. RECEIVER—APPOINTMENT—PARTIES TO SUIT.

A receiver cannot be appointed for a corporation in a suit to which it is not a party.

Appeal from Wayne; Donovan, J.    Submitted January 12, 1900.    Decided March 6, 1900.

Judgment creditor's bill by George H. Scripps against Andrew J. Crawford, Flavius L. Brooke, George E. Norris, Frederick H. Norris, George H. Hill, and the Union Trust Company, administrator of the estate of Wellesley W. Adams, deceased.    From the decree rendered, all parties appeal.  Reversed and bill dismissed.

*Robert Young*, for complainant.

*Flavius L. Brooke*, for defendants Crawford, Brooke, Norris, and Norris.

*Rowland M. Connor*, for defendant Hill.

*Thomas S. Jerome*, for defendant Union Trust Co.

HOOKER, J. Andrew J. Crawford was a debtor of Scripps, the complainant. He was engaged in the laundry business in Detroit as equal copartner with one Adams, and his interest in the laundry was all of his property subject to execution. Adams died, and the Union Trust Company was appointed administrator of his estate. The laundry had been profitable, having earned from $4,000 to $7,000 per annum, net, although the investment was comparatively small. Crawford purchased the interest of the estate in the business. An inventory was taken of the property, showing that it was worth about $3,000, and, in view of the good will of the business, Crawford agreed to pay for Adams' interest $1,500, and one-half of the net profits that should be earned for five years. The agreement stated that this was to be "as interest on said loan, and compensation for the good will of the estate in the business, and its interest in the leasehold" where the business was conducted. In 1897 the parties settled some differences by agreeing that the amount due the estate was $4,600, and this Crawford agreed to pay in weekly installments before July 20, 1901, regardless of profits. It is claimed by the defendants that on October 25, 1897, defendant Hill purchased from Crawford a quarter interest in the laundry, and that the business was afterwards conducted for their mutual benefit. It is claimed by the complainant that this assignment was collusive and fraudulent as against him, if not fictitious.

In December, 1897, the complainant put his claim against Crawford, amounting to about $2,000, into the hands of counsel for collection. Defendant Brooke was Crawford's attorney, and complainant's counsel was re-

ferred to him by Crawford when he presented the claim. Counsel arranged that complainant should defer bringing an action on the claim, and that Crawford should pay $50 a month thereafter in reduction of the demand. One payment was made in January, 1898, and, in default of a second payment, action was brought in February, 1898. Brooke appeared for defendant Crawford in that action, and at his request trial was postponed, upon the promise to make the payments thereafter. Two such payments were made after the action was brought,—one in March and one in July. On August 10th, the day to which the cause had been adjourned, Brooke requested further time to make such payment, and was granted until August 13th, and upon that day asked a further postponement; and, this being refused, he stated to counsel for the complainant that the Grand Laundry had been incorporated the day before, and the articles had been filed in the office of the county clerk that morning. Complainant's solicitor testified that counsel (defendant Brooke) told him that they could not afford to let him get a levy on that property. Judgment was taken that day.

The record shows that articles of association incorporating the Grand Laundry were filed on August 13, 1898, executed and acknowledged in due form on August 12th, signed by the following stockholders (the shares of each being stated): Andrew J. Crawford, 400 shares; George H. Hill, 175 shares; George E. Norris, 58 shares; Frederick H. Norris, 57 shares; Flavius L. Brooke, 10 shares. On the 12th day of August, 1898, Crawford and Hill assigned the property and business of the Grand Laundry to the corporation for an expressed consideration of $7,000. We are not advised that the shares subscribed were paid in money into the treasury of the company, but the property was put in by Hill and Crawford proportionately to their holdings of stock, the other stockholders adjusting with them for the stock subscribed by them. It is claimed that Brooke received his stock for a debt due him from Crawford, and that the Norrises paid Crawford $1,150 in

checks for their shares. On August 12th or 13th,—and it is not clear which day,—Brooke, as Crawford's attorney, called upon the Union Trust Company, and delivered to it an assignment executed by Crawford of his 400 shares of stock, as collateral security for its claim against him (Crawford).

Complainant took execution on his judgment, returnable September 6th. It was returned unsatisfied by the sheriff on September 7th, at which time an *alias* execution was issued, returnable December 5, 1898. It is claimed by complainant that this was levied on Crawford's interest in the corporation, and upon the property. He thereupon filed the bill in this case, and it is said to have "the double aspect of a judgment creditor's bill to reach equitable assets of Crawford not subject to levy of execution, and one in aid of execution." All defendants have answered, and the proofs were taken in open court. Mr. Jerome, representing the trust company, and defendant Brooke, were the only witnesses sworn on behalf of the defendants. The decree says:

1. That the transfer of 300 shares of stock to Brooke, Hill, and George and Fred Norris was made with intent to hinder, delay, and defraud creditors, and is void as against the complainant, and that they have no interest in the laundry as against Scripps, the complainant.

2. That complainant has a lien upon all of the shares of stock of the Grand Laundry and its assets to secure the payment of the costs of suit and the judgment ($3,024.39), and interest at 7 per cent. from August 13, 1898.

3. That said lien and the lien of the Union Trust Company, amounting at the date of the decree to $3,715, are declared simultaneous liens upon all of the shares of stock and assets of the company.

4. That the receiver appointed by the court be directed to take joint possession with the Union Trust Company of the assets and business, and operate the business of the corporation, to preserve the trade and business until the shares of stock and all property of the corporation may be sold by due process of law to satisfy the claims of complainant and the Union Trust Company.

5. The decree provides how the earnings shall be applied, and that after two years' trial, if the business fails to be profitable, it shall be closed out.

The foregoing is the substance of the decree, which contains some other provisions that need not now be alluded to.

The contention is made that the contract with the Union Trust Company was usurious, inasmuch as a much larger rate of interest than that permitted by law is provided. We think the allowance of something for the good will of the business was legitimate, and there is nothing to show that either party understood that an unlawful rate of interest was contemplated. One-half of the prospective net profits was to be paid as interest and as a consideration for the good will. We must therefore hold that the claim of the Union Trust Company, as finally fixed by the agreement of the parties thereto, was a valid claim against Crawford.

Hill's alleged purchase of a quarter interest was made in October, 1897. The bill required answers under oath, and Hill's answer was verified. It states that he paid for the quarter interest. The assignment to him bore date that day, and Brooke testified that he was present and saw it executed, and a portion of the consideration paid. We think that the complainant has failed to show an absence of good faith in this transaction.

At the time the corporation was formed, the defendant Crawford was undoubtedly in pecuniary straits. Brooke testified that the business was running down. Apparently he was unable to pay debts that were crowding him,— especially complainant's claim. Doubtless he desired to continue a business which had been profitable, and for the good will of which he had incurred a large obligation, which was yet unpaid, and one which exceeded the value of the property, aside from the good will of the business. If Brooke's testimony is true, incorporation had been in contemplation for some time. The coincidence in point of time of the judgment and the filing of articles, and assign-

123 MICH.—12.

ment of stock to the Union Trust Company, furnishes a persuasive argument that the entire scheme was a fraudulent attempt to defeat a levy by the complainant, and, so far as Crawford is concerned, we are of the opinion that such was one of the reasons for his action at that time. In other words, by assigning his interest to the Union Trust Company he gave a prior lien to a creditor who was not crowding him, and a preference for whom he has some justification. But we do not see that the formation of the corporation, or assignment of the property to it, can be complained of. We are convinced that it was a good business move, and no property was covered up thereby, unless the stock taken by other creditors was not paid for, and we find no evidence of this. Brooke testified that it was paid for by checks, and the answer of the Norrises states that their stock was paid for. Complainant did not choose to call them to explain the transaction. Brooke undoubtedly paid for his, not in cash, but by the discharge of an indebtedness, which was a sufficient consideration. This left 400 shares of the capital stock in the possession of Crawford. It was subject to levy for his debts, and is now subject to the lien of the Union Trust Company. 3 Comp. Laws 1897, § 10335 *et seq.* But we are unable to discover that such a levy was made and perfected, although it may have been intended. The Union Trust Company accepted an assignment of the stock as collateral. It had a right to ask security and accept it, although the necessary and obvious consequences would be the delay of other creditors, if not their defeat. It might have done the same by taking a mortgage of the property before it was conveyed to the corporation, and other creditors could not have prevented it, or set aside the transaction as a fraud, so long as there was no collusive attempt to aid Crawford in injuring others. It is not the province of a court to prefer creditors. That is a privilege of the debtor. In this case, if complainant's theory is correct, the estate of Adams, Hill, the two Norrises, and Brooke must lose their claims, that the complainant may obtain his pay,

while the effect of Crawford's dealings with the property postpones him to the Union Trust Company's obligation. The circuit judge has endeavored by his decree to conduct the business of the Grand Laundry, and work off these debts from earnings. As a rule, that is a practice of doubtful expediency, if lawful; and here it cannot be sustained, if for no other reason, because the corporation has had its property taken when not a party to the litigation. We think, however, that complainant has failed to establish a case upon the merits.

The decree is reversed, and the bill dismissed, with costs of both courts.

The other Justices concurred.