SPAULDING *v.* STEEL.

DEBTOR AND CREDITOR—ASSIGNMENT—FRAUDULENT TRANSACTIONS.
  That a debtor caused a limited partnership association to be
  organized, the shares in which were all held by himself and
  his immediate family, and turned over his property to such
  association, which assumed his debts, and pledged a large
  amount of such property to the debtor's son, is not ground
  for complaint on the part of an assignee for creditors, where
  the son is shown to have been a *bona fide* creditor, and it
  appears that no property otherwise available was placed
  beyond the reach of the other creditors by reason of the
  formation of such association.

Appeal from Clinton; Daboll, J.   Submitted December
5, 1900.   Decided April 16, 1901.

Bill by Oliver L. Spaulding, assignee of Robert M.
Steel and the R. M. Steel Company, Limited, against
George A. Steel, for an accounting and a discovery.   From
a decree dismissing the bill, complainant appeals.   Af-
firmed.

*Norton & Dooling,* for complainant.

*Fedewa & Walbridge,* for defendant.

HOOKER, J.   Robert M. Steel, a resident of St. Johns,
Mich., was, on January 1, 1895, a man of large property
and some debts.   Much of his property was invested in
land and various business enterprises, while his obliga-
tions were mainly in banks, and in part, at least, protected
by collateral security.   George A. Steel, the defendant,
was his son, and had been for several years in his employ.
In September, 1895, Robert M. Steel caused to be organ-
ized three limited partnerships, known as the "St. Johns
Land Company," the "Gratiot Land Company," and the
"Isabella Land Company," and took most of the stock

himself. The lands in the counties of Clinton, Gratiot, and Isabella—all in Michigan—were conveyed to the several companies, being valued, by counties, at the sums of $220,000, $50,000, and $25,000, respectively. The defendant testified that this was done to facilitate the disposition of these lands.

On January 19, 1896, Robert M. Steel experienced a stroke of paralysis, and on March 17, 1896, it was thought advisable to place his affairs in a shape to avoid the embarrassment arising from a settlement of his large business affairs through probate proceedings in the event of his early death. Apparently he had recovered from his attack of paralysis at that time, but he feared another. Accordingly, a limited partnership was formed, with a view to the conduct of his affairs and the payment of his debts. Its capital stock was $600,000, and he held all but four shares of its stock, those being taken by his immediate relatives and friends. It was called the "R. M. Steel Company, Limited." Attached to the articles of association was a list of property which he conveyed to this concern for his stock. The property was unincumbered, and consisted largely of stocks in various private corporations, and included a large number of shares of the land companies hereinbefore referred to. On the same day he assigned to the R. M. Steel Company, Limited, substantially all of his other property, and in consideration therefor that company undertook to pay all of his indebtedness. In both lists the stocks were, as a rule, inventoried at the par value. This concern did business until July 6, 1896, when it made an assignment for the benefit of creditors to the complainant, and Robert M. Steel did the same.

During the time that the R. M. Steel Company did business, it took care of paper as it matured, in one way or another, and we understand that no complaint is made that it diverted any of the property which came to its hands from the creditors, except that it gave a chattel mortgage, and otherwise pledged a large amount of the

property, to George A. Steel as security for his claim. The mortgage covered property which ultimately sold for about $900, and was not recorded. The defendant filed a claim for upwards of $50,000, and took possession of the chattel-mortgaged property on the refusal of the assignee to take it and care for it. The assignee claims to have received but little property, most of the property being in the custody of creditors, to whom it was pledged.

The bill in this case is filed for an accounting against the defendant, whose claim is alleged to be unjust, or at least excessive; and it prays discovery (oath being waived), that an account be taken of all dealings between defendant and his father and said R. M. Steel Company, Limited, that he be required to produce his books of account, and submit them for examination under such direction and control as to the court shall seem meet, and that such further and other order be made upon the said George A. Steel as the nature of the case may require. It also prays an injunction and general relief. An answer was filed, followed by the usual replication. To prove his case, the complainant offered the books and papers produced, and called George A. Steel as a witness, and substantially all of the testimony is from these sources. The bill was dismissed, and the complainant has appealed.

From the bill we should infer that the only relief sought was an accounting and reduction of defendant's claim; but much of the argument in complainant's brief seems to be devoted to a charge that previous to the organization of the R. M. Steel Company, Limited, the defendant colluded with others to mislead the creditors of his father, and postpone action by them, until he and his father should be able, through the formation of these several companies, and the transfer of certain stocks, some by assignment and some by way of security, to place the property beyond their reach. It is claimed that, by invoicing his stocks at par value when transferred to the R. M. Steel Company, Robert M. Steel and this defendant represented them to

be of a greater value than they actually were; and it is implied, and it may be said argued, that creditors were thereby led to delay action to recover their claims, and in some instances extended further credit, upon the faith of such inventories, and statements alleged to have been made to them regarding the financial standing and condition of Robert M. Steel. Again, it is urged that, soon after the land companies were formed, large blocks of the stock were assigned by Robert M. Steel to the defendant and other relatives, without adequate consideration, and that defendant caused a change to be afterwards made in Robert M. Steel's books, whereby the price was reduced from $100 to $80 per share upon all of said stock so transferred. Another claim is that the defendant transferred to his father at a high price many comparatively worthless stocks, and purchased many valuable ones from him at a low price, whereby he profited at the expense of the creditors; most, if not all, of which transactions occurred before the R. M. Steel Company was formed, and all of which transactions were made possible by misstatements and manipulation, which postponed action by the creditors. A point is also made in the brief over the failure of the defendant to record his chattel mortgage for a time, during which time one or more of R. M. Steel's obligations was renewed by the Steel Company with his indorsement.

Our examination of the testimony has convinced us that the amount of the defendant's claim can only be reduced by finding fraud in the transfers of stock; and, so far as R. M. Steel is concerned, he does not, and, we think, could not, complain. In other words, defendant has a valid claim against his father. We have no doubt that what the defendant has done was with the consent and approval of his father, and the only complaint must come from creditors, or the complainant, who in a way may represent them.

The formation of land companies and the R. M. Steel Company, Limited, and the transfer to them of property, did not necessarily wrong the creditors, for it did not of

itself put any of this property beyond the reach of R. M. Steel's creditors, who could proceed against the stock. It is true that the complainant claims that some stock in the land companies was transferred to the defendant and others without consideration; but the proof shows that this claim is unfounded. We are satisfied from the testimony that this stock was paid for at $80 per share, according to the original agreement, and that it was a fair price. The charge of the falsification of the books is not supported by proof, but, on the contrary, is satisfactorily explained.

Much is said of the impropriety of invoicing the property given in payment for the stock of the R. M. Steel Company, Limited, and as consideration for the assumption of its debts, at prices far above its value. We do not see that it makes much difference to creditors what price was paid for the property by the concern so long as it received substantially all of R. M. Steel's property, and made no disposition of it in fraud of creditors. The evidence indicates that nothing of this kind was done, unless giving the defendant security upon it can be said to have been fraudulent. The case of *Scripps* v. *Crawford*, 123 Mich. 173 (81 N. W. 1098), is in point upon this question. As in that case, we feel justified in the conclusion that the several corporations were formed in the hope—illusive, no doubt, but honest—that Robert M. Steel's debts might be paid without exhausting his property. The property was not thereby placed beyond the reach of creditors, and we are not able to see that an attempt was made to hinder and delay creditors, within any just or reasonable rule. No creditor is here testifying that he was deceived or delayed thereby, nor does it appear that any suffered as a consequence either of the formation of the companies or the alleged overvaluation in the invoice. Again, the representations made by the way of statements are not shown to have worked injury to creditors to whom they are alleged to have been made, even if false. Some, if not all, of them collected their claims, and the others did not

126 MICH.—17.

testify. There is no proof that any one relied on such statements to their injury.

The defendant's testimony contains an explanation of many of the purchases and sales of stock between his father and himself, and, while it may seem that the defendant obtained high prices for some, and bought others at low prices, if measured by values at later dates, in many instances the transactions are clearly and satisfactorily explained and justified, and in others the stocks had long before been turned out to R. M. Steel, who had used them to his advantage, if not without loss from the price afterwards allowed by him. The defendant makes a clear showing that he was a large creditor of R. M. Steel. He indorsed his paper, and otherwise aided him to the extent of many thousand dollars. Had he chosen, he might have been fully secured without having corporations formed. In fact he had such security, and released it at the time the R. M. Steel Company was formed, and took security from the company. Many other creditors already had security; and, if a preference may be given to any creditor, it is not unnatural, nor are we prepared to say that it is reprehensible, to prefer a near relative, so long as the transaction is an honest one.

It remains to inquire whether this complainant is entitled to a decree invalidating the chattel mortgage, the property having been sold as stated. No one has any reason to complain of the failure to record this mortgage except Hicks and the St. Johns Bank. It is not subject to distribution among other creditors. It in no wise affects the amount of the defendant's claim against his father, and there is no allegation in the bill which would justify a reversal of the decree upon this ground.

We are of the opinion that there is proof justifying the allowance of the salary claimed. There can be little doubt of the acquiescence in the arrangement by the stockholders of the company.

The decree of the circuit court is affirmed.

The other Justices concurred.