ANDERSON BOURGEOIS

*v.*

RISLEY REAL ESTATE COMPANY et al.

[Submitted July 8th, 1913. Decided July 18th, 1913.]

1. Evidence *held* to require a finding that a conveyance of attached land belonging to a debtor, filed for record after the attachment and dated one day prior to the date of the writ, conveying the property to a corporation, the stock of which was controlled by the debtor's wife, was fraudulent as against creditors.

2. Conveyance of property of an insolvent debtor to a corporation formed by him for the sole purpose of taking over the property, the consideration of which is the issuance of all the capital stock of the company, is void as against creditors.

3. Where attached property valued at $25,000 was sold to an attaching creditor for $1,870 under a judgment for $2,662.34 and the creditor thereupon sued in equity to set aside an alleged fraudulent conveyance of the property to a corporation, which conveyance was found to be fraudulent, he was only entitled to the amount due on his debt and not to the property, under the rule that he who seeks equity must do equity.

*Messrs. Bourgeois & Coulomb,* for the complainant.

*Mr. S. Cameron Hinkle* and *Mr. Ulysses G. Styron,* for the defendants.

BACKES, V. C.

The original bill in this case was filed by the above-named complainant in 1902. In it he alleges that on September 16th, 1901, the defendant Daniel L. Risley was indebted to him in the sum of $2,662.34, and to recover this debt he caused a writ of attachment to be issued out of the circuit court of Cape May county on the following day, by virtue of which the sheriff attached many and large tracts of land in that county, as the prop-

erty of the debtor. Subsequently, other lands were added to the levy by direction of the court. In due time the property was sold by the auditor appointed in the suit to the complainant on his bid of $1,870, and after confirmation it was conveyed to him. The bill further alleges that after the attachment issued, on October 7th, 1901, Daniel L. Risley placed on record in the clerk's office of Cape May county a deed bearing date September 16th, 1901, one day prior to the issuing of the writ of attachment, whereby he purported to convey to the Risley Real Estate Company some of the lands attached and sold to the complainant. The bill charges that this conveyance was made without consideration and for the purpose of cheating and defrauding creditors. The prayer is, that it may be decreed that (*a*) the defendants (Risley or the Risley Real Estate Company) pay the debt; (*b*) the deed be set aside; (*c*) the lands have been sold by the auditor free and discharged of said deed; (*d*) the Risley Real Estate Company reconvey the premises and to deliver up the deed for cancellation. There is also a prayer for general relief.

The Risley Real Estate Company answered. A default decree was taken against Risley. After issue was joined the complainant obtained leave to file an amended or supplemental bill. Instead of doing either he filed a bill styled "amended bill" in the name of Annie Estell Bourgeois as trustee for the complainant, in which he repeated the statements, charges and prayers of the original bill, with a single variance, that the lands were sold by the auditor in attachment to the substituted complainant, and that she holds them in trust for the original complainant. Anderson Bourgeois is made a party defendant to the amended bill. Risley and the Risley Real Estate Company answered, not denying the debt, admitting the making of the conveyance, but denying the charge of fraud and asserting that the grantor (Risley) received in payment for the conveyance, $1,000 in cash and two hundred and forty shares of the capital stock of the Risley Real Estate Company. The cause lagged until 1913, when it was brought to trial. At the conclusion of the testimony, and the arguments of counsel, it was announced that a decree would be advised in favor of the complainant.

The testimony left no doubt that the deed was a fraud upon the complainant and was made to put the debtor's property beyond the reach of creditors. Risley dealt extensively in suburban real estate. His scheme was to buy up large tracts of shore and near-shore lands, subdivide and plot them into building lots and sell them on installment payments. He had offices for the transaction of his affairs in a number of cities throughout the country. Shortly before the attachment proceedings were begun he formed the Risley Real Estate Company, with a paid in capital of $1,000. . He and two dummies were the incorporators and directors. To this company he conveyed the property in controversy, receiving in return the $1,000 he paid (if he ever paid it) as the paid in and working capital of the company and two hundred and forty shares of the two hundred and fifty shares of the issued capital stock of the company. The two hundred and forty shares of the capital stock of the Risley Real Estate Company Risley immediately transferred to a woman, who afterwards (he was then a married man) became and now is his wife. He claims that he sold them to her for about $15,000, under an agreement which he says he had with her before the formation of the company. For this we have only his word, which is absolutely unreliable. The wife, although accessible, was not called as a witness. The remaining eight shares (the two dummies each held a share) held by him he claims to have sold for cash. Risley continued in control of the company for some time after he parted with his stock; he claims it was only in the capacity of manager or sales agent.

A conveyance of the property of an insolvent debtor to a corporation formed by him for the sole purpose of taking over the property, the consideration of which is the issuance of all of the capital stock of the company, is void as against creditors. *Terhune* v. *Bank, 45 N. J. Eq. (18 Stew.) 344; Montgomery-Webb Company* v. *Dienelt, 19 Atl. Rep. 428; Sullivan* v. *International Baking Co., 60 N. J. Eq. (15 Dick.) 80; Van Campen* v. *Ingram, 12 Atl. Rep. 537; First National Bank* v. *Trebein Company, 52 N. E. Rep. 834; Roberts* v. *Hughes Company, 83 Atl. Rep. 807; Booth* v. *Bunce, 88 Am. Dec. 372; 33 N. Y. 139.*

The evidence also strongly indicates that the deed made by Risley to the company, although it bears date September 16th,

1901, was not signed by him until long after that time, and the probabilities are, not until about the date of its lodgment for record, October 7th. The acknowledgment is certified by a New Jersey commissioner residing in Philadelphia as of September 16th, and as having been acknowledged in Philadelphia, notwithstanding it appears pretty clearly that Risley at that time was in Denver, Colorado. The commissioner admitted that he sometimes, for the accommodation of Risley, had executed certificates of his acknowledgment to deeds without requiring his presence. The date in the certificate is not of the handwriting of the commissioner, nor is the ink the same as used by the commissioner in his signature. The handwriting of the date is strikingly like that of Risley, and altogether the impression made is, that the acknowledgment was certified by the commissioner on a blank form of deed, which Risley afterwards filled out and had recorded. Another significant fact is, that after the date of the deed, and before it was recorded, Risley made numerous conveyances of land, parcels of those embraced in the disputed deed, indicating that it was not then in existence. Whether the deed was antedated was not necessary to be decided, but the circumstances attending its execution and recording serves in establishing its fraudulent character. The whole contrivance was a palpable cheat and fraud.

The complainant now insists that the deed should be set aside *in toto,* because of the turpitude involved in its making, and the cloud thereby created removed from the title acquired by the sale in the proceedings at law. The property was estimated to be of the value of $25,000. Indeed it was stated by counsel that the lands at the time they were seized and sold to the complainant, were under contract of sale to the customers of Risley and the Risley Real Estate Company, upon which there was due sums aggregating $60,000. To grant the broad relief asked would yield the complainant tenfold and more the amount of the debt. It would be giving the spoils as well as the fruits of the litigation.

To decree the lands absolute in the complainant would create a situation quite as iniquitous and oppressive and as obnoxious to a court of conscience as that arising out of the fraudulent con-

duct of the defendants. Satisfaction of the debt and not pillage of the debtor's estate is equity's relief. *Payne* v. *Burks, 4 B. Monr. 492.*

The complainant, by virtue of the conveyance from the auditor in attachment, is undoubtedly vested with the legal title to the lands here involved, the possession of which he might obtain by pursuing the remedies provided by the law courts—an action in ejectment—in which perhaps equity would not interfere in behalf of the *particeps criminis. Mulford* v. *Peterson, 35 N. J. Law (6 Vr.) 127; Mulford* v. *Tunis, 35 N. J. Law (6 Vr.) 256.* But when a suitor appeals to a court of equity, he must abide its principles and submit himself to its policy and practice before relief will be afforded. "He who seeks equity must do equity" is a cardinal maxim. Professor Pomeroy, in expressing its meaning, quotes an eminent judge thus:

"The court of equity refuses its aid to give to the plaintiff what the law would give him if the courts of common law had jurisdiction to enforce it, without imposing upon him conditions which the court considers he ought to comply with, although the subject of the condition should be one which the court would not otherwise enforce." *Pom. Eq. Jur.* § *385.*

And he adds:

"The rule may apply, and under its operation an equitable right may be secured or an equitable relief awarded to the defendant which could not be obtained by him in any other manner—that is, which a court of equity in conformity with its settled methods, either would not, or even could not. have secured or conferred or awarded by its decree in a suit brought for that purpose by him as the plaintiff." *Ibid.* § *386.*

In *Doughty* v. *Doughty, 10 N. J. Eq. (2 Stock.) 347,* Chancellor Williamson. in applying this doctrine, says:

"One acknowledged principle on which courts of equity give relief is to prevent an advantage gained at law from being used against conscience."

A conveyance made in fraud of creditors was at the common law, and is by statute, absolutely void as against creditors. But it is void only as against those creditors who attack it, and then only to the extent of their debts. *20 Cyc. 819, 821; Tudor* v. *Tudor, 80 Vt. 220.*

A purchaser under an execution sale at law who invokes equity jurisdiction to set aside a fraudulent deed which interferes with his legal title, derives his rights from and is limited to those of the creditor. *Smith* v. *Espy, 9 N. J. Eq. (1 Stock.) 160.*

When the execution creditor is the purchaser he will not be permitted to retain advantage of a sale at law when to do so would be inequitable. *Payne* v. *Burks, supra.*

In *Smith* v. *Vreeland, 16 N. J. Eq. (1 C. E. Gr.) 198,* Chancellor Green, in dealing with a situation somewhat similar to the one *sub judice,* says:

"He (the complainant) now asks this court, by its decree, to declare the previous conveyances fraudulent, and thus confirm his title. The balance due on his judgments at the time of the sale amounted to about three hundred dollars. The value of the property, according to the testimony of his witnesses, was $3,-000, exceeding by about thirteen hundred dollars, the amount of the encumbrances upon it. * * * All that the complainant can ask in equity is that his debt shall be paid. If his legal rights are more extensive, they must be enforced at law without the aid of this court. Though he has acquired a legal advantage over the prior judgment of the defendant, there is no reason why he should be permitted to speculate upon that advantage at the expense of the defendant."

In *Kinmonth* v. *White, 61 N. J. Eq. (16 Dick.) 358,* Vice-Chancellor Pitney, in marshaling assets in a contest as between judgment creditors, says:

"It was at the option of the judgment creditors either to proceed at law and sell the land and test the validity of the conveyances by an action of ejectment, or to first file their bills in this court to procure a declaration that the conveyances were void, and then to sell the lands for the payment of the debts. * * * And if, in such case, after purchasing at sheriff's sale, without resorting to ejectment, he came into this court, as he might do, to have the title derived under the sheriff's deed declared valid, this court granted relief only upon condition that he should give credit on his judgment for the fair value of the land."

In *Campbell* v. *Weber, 80 N. J. Eq. (10 Buch.) 553,* the court of errors and appeals plainly intimated its views of the status of

a fraudulent grantee when attacked by a judgment creditor. In that case a judgment debtor conveyed lands to his wife, through an intermediary, in fraud of creditors, and in setting the deed aside, Vice-Chancellor Walker expressed himself, that the present estate of the wife "must be swept away from her because it rests upon the conveyances made to defraud the complainant, a creditor; so much, at least, as is necessary must be swept away, but the balance, if any, will be hers." In affirming the decree the court of errors and appeals took exception to this language, saying: "We prefer to say that she took an estate in fee-simple, subject to the right of the judgment creditor to have the conveyance treated as void as against his debt."

This is to be regarded as a declaration that the fraudulent creditor's status is not to be disturbed more than is necessary to make the creditor whole.

In *Miller* v. *Jamison, 26 N. J. Eq. (11 C. E. Gr.) 404* (reversed on the facts, *27 N. J. Eq. (12 C. E. Gr.) 586*), Chancellor Runyon set aside absolutely a fraudulent conveyance at the instance of a creditor—purchaser at an auditor's sale. The opinion does not disclose that the question of the defendant's equities was raised.

In *Hildreth* v. *Sands, 2 Johns. Ch. 35*, Chancellor Kent set aside a similar deed, saying:

"There can be no doubt but that the plaintiff, as a purchaser under Whitney's judgment, is entitled to all of the relief that the creditor himself would have been entitled to, for he stands in his place, and is armed with his rights; and though he be a purchaser at a very low price, yet it was a fair purchase in the regular course of law, and it was owing to the unwarrantable act of the debtor himself in throwing a cloud over the title that his property was thus sacrificed. It does not become the parties to the fraudulent deed to complain of the plaintiff's cheap purchase. However it may be regretted that the property has yielded but a very small compensation to the creditors, this fact cannot interfere with the question of right. The auction price was an accidental thing, growing out of the peculiar circumstances of this case, and affects only the parties concerned; but whether such a fraudulent conveyance shall stand or fall is a question deeply interesting to the whole community."

That case has a marked distinction from the one under consideration. There the complainant was a stranger to the proceedings; he was a purchaser at a public sale and the policy of encouraging attendance at public auctions in the execution of judgments was applied and upheld. Besides, it is difficult to see how the equities, such as are raised in this case, could have been there adjusted.

It seems to me that the complainant must be content with the grant of that prayer for relief which asks that "the defendants pay the debt."

The complainant is entitled to a decree setting aside as void the deed from Risley to the Risley Real Estate Company, with costs. If the defendants shall pay to the complainant, and the applying creditors in attachment, their debts pursuant to the decree, the complainant will be ordered to surrender his title. The defendant will be entitled to credit upon the debts to the amount of money realized from the sale in the attachment proceedings of lands other than those embraced in the fraudulent deed.

Application may be made for counsel fees.