### In re BRAUS.

(Circuit Court of Appeals, Second Circuit. December 11, 1917.)

#### No. 14.

1. BANKRUPTCY ☞407(1)—DISCHARGE—CONSTRUCTION OF ACT.
   Though provisions for discharge were not an incident to the original bankruptcy acts, those provisions should not be construed against the bankrupt; and, if his discharge is to be denied, it must be because there has been strict proof of the existence of some one of the bars which the statute has provided.
2. BANKRUPTCY ☞414(3)—DISCHARGE—DENIAL—CONCEALMENT OF ASSETS.
   For a bankrupt to be denied a discharge on the ground of concealment of assets, the case must be made out by more than a mere preponderance of evidence.
3. BANKRUPTCY ☞414(3)—DISCHARGE—DENIAL—EVIDENCE.
   Evidence held insufficient to show that the bankrupt who transferred his property to a corporation within four months of bankruptcy was

guilty of any fraudulent intent to hinder and delay his creditors; the bankrupt receiving practically all of the stock of the corporation.

4. BANKRUPTCY ⬤◯177—EFFECT—RIGHTS OF INSOLVENT DEBTOR.

An insolvent debtor has the right of disposition of his property until the commencement of proceedings in bankruptcy against him.

5. BANKRUPTCY ⬤◯180—DISCHARGE—DENIAL—TRANSFER.

Though it may have that effect incidentally, a transfer by an insolvent debtor cannot be set aside under Bankruptcy Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (Comp. St. 1916, § 9651), as one tending to hinder and delay creditors, unless it was made with the intention of unlawfully hindering, delaying, and defrauding creditors.

6. BANKRUPTCY ⬤◯407(3)—DISCHARGE—FRAUDULENT TRANSFER.

An insolvent debtor who owned a number of stores organized a corporation of which he held all the stock except a few qualifying shares held by his wife and another, and to such corporation he transferred the more profitable stores; it being his avowed intention to break the leases on the unprofitable stores. The bankrupt made no effort to dispose of the stock so received in fraud of creditors, and contended that he incorporated his more profitable business for the purpose of securing additional capital. *Held* that, where it did not appear that he had any unlawful intent to hinder and delay his creditors, a discharge could not be denied, though the transfer occurred within four months of the filing of the petition, on the ground that he was guilty of a fraudulent transfer with intent to hinder, delay and defraud creditors.

Hough, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of Arthur L. Braus. The bankrupt's petition for discharge was by the District Court, on objections of F. T. Van Buren and others, denied (237 Fed. 139), and the bankrupt appeals. Reversed, and cause remanded, with directions to grant discharge.

See, also, 233 Fed. 835.

Alex B. Greenberg, of New York City (Jos. L. Hochman, of New York City, of counsel), for appellant.

Mitchell & Mitchell, of New York City (Wm. Mitchell, of New York City, of counsel), for objecting creditors F. T. Van Buren and others.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. This is an appeal from an order confirming the report of a special master recommending that the bankrupt be denied his discharge on the ground that he had made a fraudulent transfer of property within the four-month period next preceding the filing of the involuntary petition against him.

The record discloses the following facts: The bankrupt was engaged in the cloak and suit business, and had been so engaged for a period of 15 years prior to the bankruptcy. He was the owner of nineteen stores in which his business was carried on. These stores were in New York City; Boston and Lowell, Mass.; Newark, N. J.; and New Haven, Conn. In January, 1915, he conveyed five of the stores to a corporation organized by himself under the name of Arthur L. Braus, Inc. These five stores were sold to the corporation for $50,000,

which sum was arrived at by taking the cost figures to the bankrupt of the stores so sold. The consideration for the sale received by the bankrupt was 494 out of the 500 shares of stock which were issued by the corporation at a par value of $100 per share. Four of the remaining shares were sold to the bankrupt's wife for $400 cash, and the remaining 2 shares were held by the bankrupt's bookkeeper in order to qualify him as an incorporator. The bankrupt retained title to all the shares of stock issued to him until an involuntary petition in bankruptcy was filed against him, which occurred two months after the aforesaid conveyance, and then, a trustee having been appointed, the bankrupt turned over to him all of the shares of stock which he had owned, about 250 of which had been pledged with other creditors of the bankrupt as security for debts, and also caused to be turned over to the trustee in bankruptcy the 500 shares of stock unissued by the corporation. All this he did voluntarily.

The bankrupt testified that at the time the incorporation was effected he did not know whether he was solvent or insolvent, although he knew that he was losing money, and he did not think whether he was solvent or insolvent. His inventory taken a year before showed that the net assets in his business were $305,915.46, with cash on hand of $18,537.50. He stated that the reason why he incorporated was that he was trying to get some friends interested in his business so as to get more capital in it, and that they had examined his books and did not wish to invest any money in any of the stores except the five which he subsequently transferred to the corporation. His purpose, he said, was to protect his creditors by getting more capital, and by closing up the stores that were being run at a loss, if he could not get lower rentals. He intended to break the leases of the other stores if the rental of them was not reduced. He was asked again, "What brought about the incorporation of these stores?" To which question he replied, "To protect my creditors." And then he was asked, "What did you have in mind, what protection did you have in mind?" To that he replied, "So I would be able to break the other leases here." He was asked whether he had made up his mind to liquidate his business. He answered, "Yes." Again he said his object was, "To protect all I could of my creditors and get rid of the bad stores."

The corporation was organized openly, and the conveyance made to it was with the knowledge of the creditors.

No one of the creditors had taken any proceedings seeking to reach any of the bankrupt's property prior to the filing of the involuntary petition in bankruptcy against him. And no one of the leases was broken.

The master reported that he was satisfied that the incorporation of the five profitable stores and the transfer to the corporation of some of the insolvent's property for the capital stock of the corporation were made by him with the intent to hinder, delay, and defraud his creditors, and that his discharge in bankruptcy should be denied on that account.

The report of the special master was confirmed by the learned District Judge, who held it fraudulent in law for an insolvent to convey

all his property to a corporation in exchange for all or nearly all its stock. While it is not clear upon the authorities, he said, that such is the law, "I cannot agree on principle that the stock is the equivalent of the chattels for the purpose of the creditors; that depends upon whether on execution sale the stock will realize as much as the chattels, which every one who has any experience knows it generally will not. A judgment creditor must, therefore, in practice buy in the stock at the sale and then try to get possession of the chattels and sell them. He may or may not succeed in this without substantial delay or hindrance. That will depend upon how surely he can disregard the corporate form, which in turn depends in part upon whether he is the only shareholder and whether there have been debts contracted by the corporation. Even then he must have another sale. I do not believe that the law should tolerate any such embarrassments to creditors when they result from mere contrivances to effect just what they do effect, and are not the incidents of a genuine effort to conduct the insolvent's affairs in his own interest."

[1, 2] The discharge of a bankrupt was not originally a feature of bankruptcy legislation. It was not introduced into English legislation until 160 years after the first bankruptcy law was enacted, and in our legislation it was not provided for unqualifiedly until the act of 1841 (Act Aug. 19, 1841, c. 9, 5 Stat. 440). There has been a growing tendency in the direction of liberality in favor of a bankrupt's discharge, and it has come to be recognized that the provisions of the law relating to discharge are not to be construed against a bankrupt, and if his discharge is to be denied it must be because there has been strict proof of the existence of some one of the bars which the statute has set up against the discharge. Thus in the case of concealment of assets the courts have required it to be made out by more than a mere preponderance of evidence. In Remington on Bankruptcy (2d Ed.) § 2467, that writer says:

"The act is very liberal towards the bankrupt as to his discharge, and strict construction of the terms under which opposition will be sustained are had in favor of the bankrupt's discharge."

And in Black on Bankruptcy, § 666, it is said that:

The "refusal of a discharge does not rest in the discretion of the judge, but the applicant is entitled to a discharge as a matter of right, unless he is found guilty of some one of the prescribed acts or omissions."

And the same writer, in section 670, speaking of the bar of a fraudulent transfer, says:

"As this (provision) is in the nature of a penal enactment, it is to be construed with some strictness."

[3] We fail to discover in anything this bankrupt did the fraudulent intent which it is necessary he should have had if he is to be denied his discharge. In what he did he was striving to maintain his solvency. It was for the benefit of his creditors that he should continue the business of the profitable stores, and it was a wise plan to assign those stores to a corporation for their fair value in stock, there being still unissued capital stock, by means of which further capital might be ac-

quired. It was also wise to stop the business in the unprofitable stores unless he could secure such a reduction of rentals as would enable him to continue in business in those stores at a profit.

We do not believe that the evidence discloses as matter of fact an intent to hinder, delay, or defraud his creditors. To be sure he transferred a large part of his property to a corporation and took stock for it in return, but he retained all the stock in his possession, and it remained liable to his creditors as fully after as before the transfer.

[4-6] Did the transfer constitute a fraud upon the creditors as a matter of law? There are some authorities that indicate that it should be so construed. But before considering them, attention may be called to a class of cases which hold that, where such a transfer of property is made to a corporation with intent to hinder, delay, or defraud creditors, it is a fraudulent transfer. There can be no question that if such an intent existed the result follows.

In Booth v. Bunce, 33 N. Y. 139, 88 Am. Dec. 372 (1865), the managing members of an embarrassed firm organized a manufacturing corporation under the general law and transferred to it the property of the partnership. A creditor of the firm, asserting that the transfer of the property was fraudulent as to creditors, levied on a steam engine which had belonged to the firm, and at sheriff's sale purchased and took possession of it. Later creditors of the corporation levied on the machine as the property of the corporation and bought it in at sheriff's sale and the property was delivered to them. For this taking the action was brought for the seizure and conversion of the engine. The plaintiff claimed that the organization of the corporation and the transfer of the property to it was a fraudulent device of the form intended to hinder, delay, and defraud their creditors. The trial judge charged the jury that, if the corporation was fairly organized and the sale of the property to it by the firm was also fair and done without fraudulent intent, the defendants were entitled to recover, and if otherwise the plaintiff was entitled to a verdict. The Court of Appeals held the charge entirely sound and that as the jury found a verdict for the plaintiff it was conclusive. The case had four trials at circuit and four reviews in the Supreme Court and was three times in the Court of Appeals. It simply shows that the effect to be given to the organization of a corporation by persons in failing circumstances who transfer their property to it depends upon the intent with which the parties acted and with that doctrine we are in full accord.

In Metcalf v. Arnold, 110 Ala. 180, 20 South. 301, 55 Am. St. Rep. 24 (1895), a bill was held not demurrable which alleged that the members of a partnership had organized a corporation to which they had transferred all the firm assets in return for its capital stock, and had done this with the intention of hindering, delaying, and defrauding their creditors, and had parceled out the stock to themselves and their wives. The bill was filed by judgment creditors of the partnership who asked that the property transferred to the corporation be subjected to the payment of their judgments. There can be no question but that this decision was right. If the transfer was made with the intent alleged, it was, of course, clearly void.

In Bennett v. Minott, 28 Or. 339, 39 Pac. 997, 44 Pac. 288 (1896),

the court held that where a debtor, for the purpose of hindering and delaying creditors, organizes a corporation and transfers to it all his assets, he himself being the owner of practically all the corporate stock, and continuing the business the same after as before the incorporation, using the proceeds for his own benefit, equity would set aside the transfer at the instance of creditors. In that case the total number of shares was 300 having a par value of $100 a share, and the debtor took 120 shares, his wife 40, and his attorney and a friend one each. The claim was made that he was indebted to his wife, at the time the stock was given her, in the sum of $10,000 and that this was in payment of the debt due to her. At the time he organized the corporation he was being pressed by creditors and he transferred to the company in return for the stock substantially all the property he owned not exempt from execution. The court, in speaking of the transfer by the debtor of his property to the corporation in return for stock, said:

"If this sale was valid and made in good faith the plaintiff must fail in this suit without regard to the disposition Minott may have made of his stock in the corporation. But, on the other hand, if it was made, as we think the evidence clearly shows it to have been, for the purpose of hindering and delaying creditors, then it is void as to them."

We fully agree with this holding.

In Kellogg v. Douglass County Bank, 58 Kan. 43, 48 Pac. 587, 62 Am. St. Rep. 596 (1897), the plaintiff had organized a corporation to which he transferred his business house, his stock of merchandise, and certain notes and accounts, retaining a small amount of property in his own name. He was at the time insolvent. The capital stock of the corporation was fixed at $15,000 of a par value of $100 a share. He received 100 shares, his wife 20 shares, and his nephew 20 shares.

"He * * * organized a corporation," said the court, "in order to shield himself from the attacks of his creditors, and enable him to carry on his business and enjoy the income therefrom. The incorporation seems to have been little but a paper scheme devised in his own interest. His wife and clerks were mere instruments in his hands, contributing no real capital and obtaining no substantial interest in the property. Clearly, a fraud may be committed in the transfer of a debtor's property to such a corporation, as well as by a transfer to another individual for the purpose of placing it beyond the reach of creditors. In such case, the court was clearly warranted in closely scrutinizing the transaction and declaring its real purpose, notwithstanding the elaborate fabrications of charters, by-laws, and paper transfers."

There is nothing in this, from which we dissent. Such a transaction is not necessarily fraudulent, but it is to be carefully scrutinized to arrive at the real intent.

But there is another class of cases which hold it fraudulent per se for a person whose financial circumstances are embarrassed to organize a corporation and transfer to it a large part of his property, receiving therefor the capital stock of the corporation so formed.

In Benton v. Minneapolis, etc., Co., 73 Minn. 498, 76 N. W. 265 (1898), an insolvent person transferred nearly all of the goods in his wholesale store and all of the fixtures therein, "about all he had," to a corporation and accepted in payment shares of stock in the corporation which he was instrumental in forming; the stock so received amount-

ing to $9,600 par value. He immediately turned over shares of the par value of $5,000 in payment of a note for that amount held against him by his mother-in-law, and soon after pledged the balance of his shares, par value $4,600, as security for a loan of $1,500 made to him and which he used in paying off a loan made to him by a bank. The action was brought to set aside the transfer to the corporation on the ground that it was fraudulent, and the case was tried without a jury, and judgment was ordered for the plaintiff which the Supreme Court affirmed, saying:

"He (defendant) must have intended the necessary consequences of his own acts. * * * He converted his available personal property into that which was much less available for the payment of his indebtedness; and the transaction had a direct and immediate tendency to hinder, delay, and defraud his creditors."

In holding the transaction fraudulent all the circumstances shown on the trial were, however, taken into the account, and they strongly suggested fraud. And it does not clearly appear that the court in the absence of those circumstances would have held the transfer fraudulent per se as matter of law.

In First National Bank of Chicago v. Trebein Co., 59 Ohio St. 316, 52 N. E. 834 (1898), the court held that where a failing debtor formed a corporation, composed of himself and certain members of his family, he taking substantially all the stock, and at once conveyed all his property to the corporation in exchange for the stock, and immediately placed all his stock except one share with certain of his creditors as collateral security to their claims, the transfer to the corporation was a fraud on his other creditors and could be set aside. The court declared that the debtor's good faith in the transaction was to be determined by its legal effect on the rights of others, and that if its legal effect worked a fraud on their rights the finding of a court that the parties acted in good faith was simply an erroneous conclusion of law from the facts. In the course of its opinion the court said:

"The transaction cannot be likened to a conveyance to a third person for a valuable consideration; considered in the light of the facts, it was no more than a conveyance from himself to himself. The corporation was in substance another F. C. Trebein. His identity as owner of the property was no more changed by his conveyance to the company than it would have been by taking off one coat and putting on another. He was as much the substantial owner of the property after the conveyance as before, and had substantially the same use of it as if the conveyance had not been made. The only purpose the creation of the corporation and the conveyance to it subserved was to hinder creditors in levying upon the property and selling it on execution at law; and it is this hindrance the law will not permit, and, when ascertained in a proper proceeding, requires the conveyance to be set aside and the property administered for the benefit of all the creditors of the fraudulent grantor."

In Bourgeois v. Risley Real Estate Co., 82 N. J. Eq. 211, 88 Atl. 199 (1913), which was a case before the vice chancellor, it is said that:

"A conveyance of the property of an insolvent debtor to a corporation formed by him for the sole purpose of taking over the property, the consideration of which is the issuance of all of the capital stock of the company, is void as against creditors."

This brings us to another class of cases which hold that it is not fraudulent per se for a person financially embarrassed to organize a corporation and transfer to it the largest part of his property, receiving in return the capital stock of the company which he continues to retain in his possession.

In Coaldale Coal Co. v. State Bank, 142 Pa. 288 [1] (1891), the members of a partnership in mining and selling coal, indebted but not insolvent, formed a corporation with a capital stock fixed at $250,000, consisting of 2,500 shares of the par value of $100 a share. The members of the partnership transferred all the firm property to the corporation and received in return all the shares except six which were distributed to six different persons so that there might be a sufficient number of persons for officers and directors of the company. At the time the corporation was formed the partnership owed bills payable in excess of bills receivable in the amount of $150,000. But after the corporation was formed the partners continued to mine and ship coal in the firm name and became bankrupt. It was held that creditors of the partnership had no right to levy upon and sell the corporate assets as the property of the partnership. The jury was instructed to bring in a verdict for the plaintiff, there being not sufficient evidence of fraud for the court to submit the question to the jury, the court declining to charge that it was fraud in law to transfer the firm property to the corporation in return for the capital stock issued to the individual partners. The Supreme Court held this was no error and affirmed the judgment, saying that there was nothing to show that the transfer was intended as a fraud upon creditors.

"It was not," said the court, "a withdrawal of their property from the grasp of creditors. On the contrary, it remained subject to their claims, though in a changed form. The interest of the partners in the corporation was represented by stock. This stock was as much liable to the demands of creditors as was the property itself before the formation of the company."

In Scripps v. Crawford, 123 Mich. 173, 81 N. W. 1098 (1900), a transfer made by the defendant of all his assets to a corporation which he had organized was held valid, athough the court was satisfied that the transfer was made to defeat a levy by a judgment creditor. The court so held because in its opinion the stock being subject to levy was the equivalent of the property transferred to the corporation. And the same court, in Plaut v. Billings, Drew Co., 127 Mich. 11, 86 N. W. 399 (1901), adhered to the doctrine announced in the Scripps Case. The Plaut Case was an action to set aside a transfer by a debtor of all of his merchandise to a corporation organized by himself and another person on the ground that the property was conveyed to it by the debtor with intent to hinder, delay, and defraud his creditors, and in return for which merchandise he had received full value in stock. The court said:

"We are not able to distinguish this case from Scripps v. Crawford, 123 Mich. 173, 81 N. W. 1098. In that case it was held that the transfer of property to a corporation of which the transferor is an organizer, and the acceptance of stock for the full value of the property could not work an injury to creditors, as the property, in its new form, is still subject to levy and sale to satisfy the creditors' debts."

[1] 21 Atl. 811.

In Kingman & Co. v. Mowry (1899), 182 Ill. 256, 55 N. E. 330 (74 Am. St. Rep. 169), the court held that the formation of a corporation by a debtor who transfers all his property to it in good faith, after notice to his creditors and with the approval of most of them, as being the most desirable method of conserving the interests of all, is not fraudulent either in fact or law, where the debtor retains the open ownership of the stock interest based upon the value of the property. It declared that a mere change of property by a debtor into a stock interest in a corporation to which the property is conveyed is not fraudulent in law on the ground that it compels a creditor to levy upon and sell the stock interest instead of the property, upon which the creditor has no lien.

"The law has," it was said, "no universal rule that a mere change of the property into a stock interest in a corporation must be denounced a fraud in legal contemplation though it may be clearly seen it is not so in fact. The operations of a debtor in dealing with his property may so change its character as to make it more inconvenient to levy upon and sell the same under execution without subjecting the debtor, as matter of law or fact, to the charge he has fraudulently hindered and delayed his creditors in the collection of their debts."

In Shumaker v. Davidson, 116 Iowa, 569, 87 N. W. 441 (1901), the court said:

"We can easily imagine a case where a transfer to a corporation would be held fraudulent. If a debtor should organize such an artificial institution for the purpose of shielding himself from creditors, and should transfer his property to it, without other consideration than the stock of such corporation, no doubt the transaction would be fraudulent. And it is no doubt true that a corporation, as well as an individual, may be so connected with a fraudulent conveyance as that the transfer will be set aside. But it must in either case first be shown that there was a fraudulent intent on the part of the grantor in the disposition of his property. Without that there can be no fraud, provided the conveyance was based on a consideration."

We agree with the above statement that the transfer is not to be held fraudulent unless it first be shown that there is a fraudulent intent behind it.

In Gardiner v. Haines, 19 S. D. 514, 104 N. W. 244 (1905), it was held that an embarrassed debtor has a right to organize a corporation and transfer his property to it for stock so long as such transfer is not with intent to defraud. And the court said that:

"During the year that Haines (the debtor) held the capital stock of the corporation his stock was subject to seizure or attachment upon execution, the same as would have been his stock of merchandise; hence the creditors of Haines were neither hindered nor delayed by the transfer of * * * merchandise to the corporation."

The conclusion we have reached upon an examination of the cases has led us to the conclusion that the weight of authority is against the conclusion reached by the District Judge, and we are also satisfied that upon principle it is better to hold that in such a case as is here presented the question of intent is one of fact and not of law. In holding that such a transfer of property as was made in this case was not fraudulent per se, we have kept in mind certain well-established prin-

ciples of law which lead up to such a conclusion. These are that the fact that a debtor is insolvent does not in itself deprive him of the right to sell, or mortgage, or pledge, or otherwise transfer his property for a valuable and adequate consideration. Bergen v. Porpoise Fishing ·Co., 42 N. J. Eq. 397, 400, 8 Atl. 523. An insolvent debtor has the jus disponendi of his property until the commencement of proceedings in bankruptcy against him. And the fact that a transfer operates incidentally to hinder or delay creditors is not in itself sufficient to make it void. Every conveyance of a debtor's property may have that effect in some degree. 20 Cyc. 464, and cases there cited. It is also the law that it is not every intent to hinder or delay creditors in collecting their debts that avails to avoid a transfer under section 67e of the Bankruptcy Act. It is every intent to hinder, delay, and defraud creditors unlawfully only, not every intent to hinder or delay them in collecting, or to prevent them from collecting, their claims, that avails to avoid a transfer under that section.

The matter came before our court in 1914, in Re Julius, 217 Fed. 3, 133 C. C. A. 328 (L. R. A. 1915C, 89).[1]

In that case insolvent persons transferred all their property to a ·corporation organized for the purpose by friends of the bankrupts, none of whom were creditors, and who took the stock, and the corporation paid for the property its full value, putting into the hands of the counsel of the bankrupts the amount paid which was to be distributed among such of the creditors of the bankrupts as were willing to accept a certain per cent. of their claims. The discharge of the bankrupts was refused by the lower court on the ground that they had made a transfer of their property with intent to hinder, delay, and defraud ·creditors. This court on the appeal reversed the court below and remanded the case with directions to grant the discharge. This we did because we were satisfied that the transfer was made in entire good faith and for a valuable consideration. In that case we said:

"The intent to defraud is something distinct from the mere intent to delay or hinder. But there is no distinction between delaying and hindering. The statute must be construed according to its reasonable intent and object, 'and by a reasonable construction only such hindrance and delay as will operate .as a fraud come within its operation.' Bump on Fraudulent Conveyances (3d Ed.) p. 20. This author, after stating that the presence of intent is essential goes on to explain that: 'The transfer must also be devised and ·contrived of malice, fraud, covin, collusion, or guile.' Id., p. 20."

---

[1] In the recent case of Dean v. Davis, 242 U. S. 438, 445, 446, 37 Sup. Ct. 130, 61 L. Ed. 419 (1917), the Supreme Court in considering transfers which hinder, delay or defraud creditors, refers to several cases decided in the District and Circuit Courts which it finds it difficult to reconcile with the great weight of authority and its own decisions. The case of In re Julius is not among those so mentioned. The case of Sargent v. Blake, 160 Fed. 57, 87 C. C. A. 213, 17 L. R. A. (N. S.) 1040, 15 Ann. Cas. 58, cited in our opinion in In re Julius, is among the cases so criticized. But our decision in In re .Julius was not dependent upon Sargent v. Blake, and was cited with a number of other cases to show how far the courts had gone in a certain direction, and the citation was without comment from us either in 'approval or disapproval. If the Supreme Court deemed In re Julius inconsistent with its ·decisions we should naturally expect that it would have been included among ·those which it enumerated.

This seems to us conclusive of the case now presented to the court. The transfer which the bankrupt made to the corporation, even though it hindered and delayed creditors, certainly did not defraud them and was not intended to defraud them. And unless there was such an intent to defraud the bankrupt is entitled to his discharge.

The decree below must be reversed, and the cause remanded, with directions to grant the bankrupts their discharge; and it is so ordered.

HOUGH, Circuit Judge. From the majority opinion I am compelled to dissent:

(1) Because the question, whether it should be conclusively held fraudulent for an insolvent to convey all his property to a corporation in exchange for all or nearly all of its stock, was in my opinion correctly disposed of both on reason and authority by Learned Hand, District Judge, in the lower court.

(2) Because by bankrupt's own testimony it was proved that the conveyance was in fact fraudulent. He admitted that he created his new corporation to coerce or compel the landlords of his unprofitable stores to reduce their rentals to a point that might enable him to make money. Such an assertion of intent states a purpose to defraud. Undoubtedly the bankrupt too deemed it "wise to stop the business in the unprofitable stores," but such wisdom gave him no right to change, into easily hidden corporate stock, visible property on the faith of which he had received credit. That stock shares are not equivalent to stocks of goods seems especially plain, and the exchange was a badge of fraud.

But what Braus did with the corporate stock taking the place of all the property out of which he had any hope of profit is instructive. As soon as he formed the new corporation, he made new creditors, borrowing (whether in his own name or that of the new corporation does not appear) new money for the use of that company, and for such loans presently made he hypothecated 356 out of its 500 shares. Thus in effect he not only conveyed his property, but hypothecated the stock that took the place of said property in order to get money for the benefit of an entity, which was not liable to the men who had largely furnished what the new concern got.

Braus knew that he was sinking into insolvency, if not already insolvent; but the only definite statement he makes of the purpose of transfer is that it was to protect "all I could of my creditors and get rid of the bad stores," i. e., get rid of them without paying the rent. The whole sentence (if it means anything) means that he would pay if he could those creditors whom it was profitable for him to keep in a good humor. This is the object of most fraudulent transfers.

(3) The majority opinion places special reliance on In re Julius, 217 Fed. 3, 133 C. C. A. 328, L. R. A. 1915C, 89. That case largely rested on Sargent v. Blake, 160 Fed. 57, 87 C. C. A. 213, 17 L. R. A. (N. S.) 1040, 15 Ann. Cas. 58. The Sargent Case together with our earlier decisions in Re Bloch, 142 Fed. 674, 74 C. C. A. 250, and in Re Baar, 213 Fed. 628, 130 C. C. A. 292, have been specifically disapprov-

ed, at least as to their language, in the recent case of Dean v. Davis, 242 U. S. 438, 32 Sup. Ct. 130, 61 L. Ed. 419. I think conformity to the spirit of that decision would produce affirmance of the order appealed from.