**In re DUNCAN & FORBES DEVELOPMENT, INC., Debtor.**

**No. LA 06 16050 SB.**

United States Bankruptcy Court, C.D. California.

April 6, 2006.

Andrew E. Smyth of Smyth Law Offices, Counsel for the debtor.

Simon Aron of Wolf, Rifkin, Shapiro & Schulman LLP, Los Angeles, Counsel for creditors Sunset Partner, L.P. and Ventana Capital.

### Order Denying Relief from Stay on § 362(d)(4) Grounds

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. Introduction

Creditor Sunset Partner, L.P. ("Sunset") brings this motion for relief from automatic stay with respect to real property belonging to debtor Duncan & Forbes Development, Inc. ("D & F"). The court denies Sunset's motion insofar as, based on § 362(d)(4),[1] it is grounded on a scheme to delay, hinder, and defraud Sunset through a transfer of the subject property without Sunset's consent. Alternatively, the court has granted an order lifting the stay for "cause" pursuant to § 362(d)(1). Thus, the motion is granted in part and denied in part.

### II. Relevant Facts

Charles E. Stell ("Stell"), purchased the property here at issue, a mixed use building in Los Angeles, in 1999. The building, of some 2234 square feet sitting on a lot of 6011 square feet, is located in a poor neighborhood in South Central Los Angeles and is in fair condition. The property is worth approximately $340,000, and is encumbered by a first deed of trust in favor of an unrelated lender dated October, 2005 securing a debt of approximately $270,000.[2] A notice of default for this loan was recorded in August, 2006.

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Because this debt is not much older than a year, and is in default, we assume without deciding that the unpaid balance remains approximately $270,000, the amount of the original loan.

In March, 2006, before the notice of default, Stell obtained a $30,000 loan from Sunset secured by a second priority deed of trust on the same property. The promissory note provided for Stell to pay Sunset $375 monthly for seven months, and to pay the remaining balance in a balloon payment on November 1, 2006.

Stell failed to make the September 1, 2006 payment to Sunset. On September 13, Sunset recorded a notice of default. Stell and D & F have made no further payments on the loan.

On November 16, 2006, Stell transferred[3] the property to D & F, a corporation of which he was chief executive officer.[4] Four days later, on November 20, 2006, D & F filed this chapter 11 case as a single asset real estate case as defined under § 101(51B).

On December 15, 2006 (less than a month later), Sunset filed this motion for relief from stay. Sunset bases its motion on two grounds: cause under § 362(d)(1), and a scheme under § 362(d)(4) to delay, hinder, and defraud Sunset. The court has granted relief from stay for cause. However, the court denies relief under § 362(d)(4) for the reasons stated herein.

### III. Discussion

■■■ The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 added subsection (d)(4) to § 362. The general purpose of this subsection, according to the legislative history, is to curb abusive bankruptcy filings. *See* H.R. Rep. No. 109–31(1) at 70 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 138–39.

Section 362(d) provides in relevant part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . .—

. . .

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either—

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.[5]

To prevail on a motion under § 362(d)(4)(A), Sunset must prove the following elements:

(1) it holds a security interest in the real property at issue;

(2) the filing of the petition was part of a scheme;

(3) one purpose of the scheme was to delay creditors;

(4) a second purpose of the scheme was to hinder creditors;

---

**3.** Sunset alleges that this transfer was made "without consideration." Sunset points to no evidence supporting this contention, except that the transfer was made by means of a quitclaim deed instead of the more usual warranty deed.

**4.** The evidence does not disclose when Stell became CEO of D & F or whether he was its CEO at the time of the initial acquisition of the property in November, 1999. The record also does not disclose the identity of the D & F shareholders. However, this transfer would likely not make sense if Stell were not the principal shareholder of D & F. The court assumes without deciding that this is so.

**5.** Sunset makes no claim that the debtor (or Stell) has filed a relevant prior bankruptcy case. In consequence, subpart (B) of § 362(d)(4) is not involved in this case.

(5) a third purpose of the scheme was to defraud creditors;

(6) the scheme involved a transfer of all or part ownership in real property without the consent of the secured creditor or court approval;[6] and

(7) the creditor had a right to consent to the transfer (absent court approval).

Sunset's security interest is adequately shown through copies of its promissory note and deed of trust attached to the moving papers.[7] The remaining elements must be examined in further detail.

### 1. Scheme

■ For Sunset to obtain relief under § 362(d)(4)(A), the court must find sufficient evidence that the filing of the bankruptcy case was part of a scheme for the purposes specified in § 362(d)(4)(A). Neither the bankruptcy code nor the legislative history gives an indication of what qualifies as a "scheme". Black's Law Dictionary gives the following definition of "scheme":

> 1. A systemic plan; a connected or orderly arrangement, esp. of related concepts <legislative scheme>. 2. An artful plot or plan, usu. to deceive others <a scheme to defraud creditors>.

BLACK'S LAW DICTIONARY 1372 (8th ed.2004). The second of these definitions is most relevant to § 362(d)(4): an artful plot or plan. An "artful" plot or plan, in this context, the court takes to be a plan adopted for the nefarious purposes specified in the statute: to delay, hinder and defraud creditors through multiple bankruptcy filings or an improper transfer of property.

■ A scheme is an intentional construct. It does not happen by misadventure or negligence. Thus, § 362(d)(4)(A) scheme is an intentional artful plot or plan to delay, hinder or defraud creditors.

It is not common to have direct evidence of an artful plot or plan to deceive others. In general, the court must infer the existence and contents of a scheme from circumstantial evidence. The party claiming such a scheme must present evidence sufficient for the trier of fact to infer the existence and content of the scheme.

■ Notably for this case, § 362(d)(4)(A) does not require that it be the debtor who has created the scheme or carried it out, or even that the debtor be a party to the scheme at all. This case provides a good illustration why § 362(d)(4)(A) does not impose such a requirement. Sunset contends that Stell, the debtor's chief executive officer who owned the property at issue himself until four days before this bankruptcy filing, was the party who conducted the scheme. If he engaged in a scheme as described in § 362(d)(4)(A), this is a sufficient basis for granting relief from stay thereunder.

---

**6.** It is not at all clear how a debtor could obtain court approval for a transfer of ownership in real property that would avoid § 362(d)(4). The only court approval that would be effective against all creditors would have to come in a bankruptcy case. However, the scheme would have to exist apart from the bankruptcy case where the relief from stay is sought. Court approval in pending litigation involving the debtor would not qualify, because such a court order would not implicate creditors generally, but only the parties to the litigation.

**7.** Ventana Capital, acting as agent for Sunset, originally brought this relief from stay motion. Finding that this movant was not the real party in interest, the court continued the hearing to permit Sunset to join in the motion. FED. R. CIV. PRO. 17 requires that "[e]very action shall be prosecuted in the name of the real party in interest." Rule 7017 adopts Rule 17 by reference, and both are adopted by reference in Rule 9014(c), which is applicable to motions for relief from stay.

The evidence in this case in support of a relevant scheme is extremely thin. In support of its claim that Stell engaged in a scheme prohibited by § 362(d)(4)(A), Sunset cites only three facts. First, Stell borrowed money from Sunset secured by the real estate at issue; second, Stell transferred the real estate to D & F by quitclaim deed after the Sunset loan matured and while foreclosure was pending; third, D & F filed its bankruptcy case four days after the transfer.

Sunset makes no claim that the borrowing was nefarious in any way. According to the evidence before the court, this transaction was apparently entirely legitimate.

Sunset does cast aspersions on the transfer to D & F. However, the court finds that, at best, this evidence is weak. The transfer of real estate from an individual to a related corporation is a very common transaction undertaken for important legal and practical reasons. Indeed, such a transfer is a common element of good corporate planning. Sunset presents no evidence that the use of a quitclaim deed for this purpose is suspicious.

However, the transfer of property from an individual to a related corporation while a foreclosure is in progress is more suspicious. Nonetheless, it can be a legitimate transaction in a variety of circumstances. The filing of a bankruptcy case soon after a transfer of property, which is its only asset, to that corporation adds a second level of suspicion to the transaction.

However, in the court's view, these two events are not sufficient for the court to infer a "scheme", within the meaning of § 362(d)(4)(A). In consequence, the court declines to infer from this evidence that Stell engaged in a scheme described by § 362(d)(4)(A).

### 2. Scheme to delay, hinder, and defraud

■ The terms "delay", "hinder" and "defraud" are terms of art in the legal system and in bankruptcy law. The juxtaposition of these terms has a history of several centuries in the common law, where they have consistently been a part of both fraudulent transfer law and bankruptcy law.[8]

For centuries, bankruptcy laws have provided remedies for creditors when debtors have taken unlawful actions with the intent to delay, hinder or defraud them. The first English bankruptcy law, enacted in England in 1542–43, imposed sanctions on debtors for certain kinds of actions that were "intend[ed] [to] delay or defraud their creditors deceitfully ...."[9] The next bankruptcy law, adopted in 1570, authorized an involuntary bankruptcy case against any person who engaged in certain conduct with "the Intent or Purpose to defraud or hinder any of his or her Creditors ...."[10]

These antecedents are embodied today both in the bankruptcy code and in state fraudulent transfer laws, which authorize the avoidance of a transfer made with the intent "to hinder, delay or defraud" a cred-

---

**8.** For example, the first English bankruptcy law provided that a person "shall be reputed, deemed and taken for a Bankrupt" if the person had undertaken any of a variety of actions "to the Intent or Purpose to defraud or hinder any of his or her Creditors ...." An Act touching Orders for Bankrupts, 1570, 13 Eliz., ch. 5, § I (Eng.). Every U.S. bankruptcy law has in essence incorporated this fraudulent transfer principle.

**9.** *See,* An Act against Such Persons as Do Make Bankrupts, 1542–43, 34 & 35 Henry VIII, ch. 4, § IV.

**10.** *See* An Act touching Orders for Bankrupts, 1570, 13 Eliz. I, ch. 7, § 1.

itor.[11] For example, § 547(a)(1), the fraudulent transfer provision of the bankruptcy code, authorizes a trustee to avoid any transfer of property by the debtor within two years before the bankruptcy filing made with "actual intent to hinder, delay, or defraud any entity to which the debtor was ... indebted ...."

The court finds that fraudulent transfer law provides the proper construction of these terms in § 362(d)(4).

The foregoing statutes all have a very important difference from § 362(d)(4). In every one of those statutes, the phrase "to hinder, delay, or defraud" is always in the disjunctive. In consequence, a court can find a violation if the debtor has acted with any one of the three following intents: intent to hinder, intent to delay, or intent to defraud.

In contrast, § 362(d)(4) uses the terms conjunctively, not disjunctively. This change in the statutory language requires that each of the terms be satisfied separately.

### a. Delay and Hinder

To qualify for relief from the automatic stay under § 362(d)(4), Sunset must show that D & F engaged in a scheme to delay and hinder its creditors. Under fraudulent transfer law, "hinder" and "delay" have the same meaning.[12] See, e.g., In re Braus, 248 F. 55, 64 (2d Cir.1917). To delay and hinder a creditor is to forestall its efforts in collecting on its debt unlawfully.

"Hinder" and "delay", as used in the fraudulent transfer context, are subject to a very important judicial gloss. Only "unlawful" hindrance or delay can be counted for fraudulent transfer purposes. See, e.g., id.; Irving Trust Co. v. Chase Nat'l Bank, 65 F.2d 409, 412 (2d Cir.1933); Richardson v. Germania Bank, 263 F. 320, 324 (2d Cir.1919); Sargent v. Blake, 160 F. 57 (8th Cir.1908). An ordinary hindrance or delay is insufficient to support a claim for fraudulent transfer.

A transfer with unlawful intent to hinder or to delay "must be devised and contrived of malice, fraud, covin, collusion, or guile." Braus, 248 F. at 64. Absent this requirement, every voluntary bankruptcy filing would satisfy an important element of § 362(d)(4), and would support an order for relief from the automatic stay under this provision. This interpretation would prove too much, and would threaten the availability of bankruptcy relief altogether.

In consequence, any lawful delay, such as the filing of a bankruptcy case or the transfer of property from an individual to a corporation controlled by that individual, does not qualify as a delay under this statutory language. Perforce, such a delay also is not evidence to support a violation of § 362(d)(4).

In this case, there is a notable absence of evidence of a scheme to hinder and delay creditors unlawfully, or even to hinder and delay Sunset unlawfully. Apart from the transfer to D & F, the only evidence is that Stell did not pay, that

---

**11.** See § 548(a)(1). This language also appears in Uniform Fraudulent Transfer Act § 4(a)(1) (2005); and in Cal. Civ. Code § 3439.04 (2006) (the California version of the Uniform Fraudulent Transfer Act). See also § 727(a)(2) (denying a chapter 7 discharge to a debtor who, with this intent, has transferred, removed, destroyed, mutilated or

concealed property that would otherwise become property of the estate).

**12.** This illustrates the importance of rejecting "plain meaning" when dealing with legal terms of art with a history of some five hundred years.

Sunset commenced a non-judicial foreclosure proceeding, and that the owner (after the transfer) filed this bankruptcy case while the foreclosure was pending.

The court cannot find a scheme to hinder and delay unlawfully in the transfer of the property from Stell to D & F, followed by D & F's bankruptcy filing. Sunset makes no claim that either Stell or D & F contrived this transfer out of "malice, fraud, covin, collusion or guile." Thus the court finds the evidence insufficient to show that either Stell or the debtor engaged in a scheme to hinder and delay its creditors unlawfully.

### b. Defraud

 Sunset cannot prevail under § 362(d)(4) unless, in addition to showing that D & F engaged in a scheme to delay and hinder its creditors, it shows that D & F engaged in a scheme to defraud its creditors. As with the "hinder and delay" element, the filing of a bankruptcy case cannot alone constitute a scheme to defraud under § 362(d)(4).

 A scheme to defraud creditors, in the fraudulent transfer context, means a scheme to avoid paying them. *See* 4 JAMES WILLIAM MOORE, COLLIER ON BANKRUPTCY ¶ 67.37 (14th ed.1978). A transfer of property is fraudulent if "the debtor intends to put the property and its proceeds beyond the reach of his creditors ...." *Van Iderstine v. Nat'l Disc. Co.*, 227 U.S. 575, 582, 33 S.Ct. 343, 57 L.Ed. 652 (1913); *accord Lovett v. Faircloth*, 10 F.2d 301, 304 (5th Cir.1925). In addition, a transfer may be fraudulent if its intent is to deprive creditors of the benefits to which they are entitled under the bankruptcy law. *See Dean v. Davis*, 242 U.S. 438, 444, 37 S.Ct. 130, 61 L.Ed. 419 (1917).

Because intent to defraud is not commonly admitted, courts frequently must rely on circumstantial evidence of intent to defraud. Some typical examples of such circumstantial evidence have become known as "badges of fraud." *See, e.g., BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540–41, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (tracing "badges of fraud" to early English cases). The Uniform Fraudulent Transfer Act has codified some typical badges of fraud:

(1) Whether the transfer or obligation was to an insider.

(2) Whether the debtor retained possession or control of the property transferred after the transfer.

(3) Whether the transfer or obligation was disclosed or concealed.

(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(5) Whether the transfer was of substantially all the debtor's assets.

(6) Whether the debtor absconded.

(7) Whether the debtor removed or concealed assets.

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

*See* UNIFORM FRAUDULENT TRANSFER ACT § 4(b) (2005); CAL. CIV. CODE § 3439.04(b) (West 2007) (codifying Uniform Fraudulent Transfer Act § 4(b)). For the pur-

poses of this statute (in contrast to the case before the court), "debtor" means Stell (the transferor), and not D & F (the debtor in this bankruptcy case).

 A scheme to defraud differs from a scheme to hinder and delay creditors. *See, e.g., In re Braus,* 248 F. 55, 64 (2d Cir.1917). A scheme to hinder or to delay does not require an intent not to pay creditors at all. A debtor may adopt a scheme to hinder or to delay creditors while intending to pay them ultimately. In contrast, a scheme to defraud creditors requires an intent not to pay them at all.

Sunset presents insufficient evidence to support an inference that D & F intended not to pay its creditors. Equally, it presents insufficient evidence for the court to infer that Stell intended to avoid paying his creditors by transferring the property here at issue to D & F and beyond the creditors' reach. Notably, because the property is collateral for the debt to Sunset, the transfer of the property to D & F had no effect on Sunset's right to be paid from the collateral, except to require Sunset to deal with the ensuing D & F bankruptcy case.

The court cannot find, based on this evidence, that Stell's actions constituted a scheme to defraud.

### 3. Secured Creditor's Consent

 A borrower of secured credit has no obligation to obtain the approval of the secured creditor before alienating the property serving as collateral. The right to transfer one's own property is a widely recognized right. As the U.S. Supreme Court has stated, there is a "time-honored practice of viewing restraints on the alienation of property with disfavor." *Asgrow Seed Co. v. Winterboer,* 513 U.S. 179, 194, 115 S.Ct. 788, 130 L.Ed.2d 682 (1995) (Stevens, J., dissenting). "Generally the owner of ... property ... is free to dispose of the property as he sees fit." *Id.* Even if

Sunset could contract with D & F to require Sunset's approval for any transfer of the property here at issue (an issue not raised in this case), the loan documents in this case give no such right to Sunset.

 A secured creditor with a properly recorded or filed security interest may assert the interest against any subsequent owner of the collateral. A secured creditor with real property collateral protects its interest in the collateral by a recordation in the county real estate records. *See generally Great Western Bank v. Snow (In re Snow),* 201 B.R. 968, 974 (Bankr.C.D.Cal.1996) (describing California recording act and procedures thereunder); *Walker v. Cal. Mortgage Serv.,* 67 B.R. 811, 814–15 (Bankr.C.D.Cal.1986) (describing principal kinds of recording acts for real estate and their effects), *aff'd,* 861 F.2d 597 (9th Cir.1988). A secured creditor with other collateral usually protects itself with a filing under Article 9 of the Uniform Commercial Code. *See, e.g.,* Cal. Com. Code § 9310(a).

In addition, a secured creditor commonly protects its interest with respect to a transfer by the borrower by negotiating a due on sale clause, pursuant to which the loan matures upon the transfer of the collateral to a new owner. Under a typical due on sale clause, the transfer of ownership of the property gives the lender a right to immediate repayment of its loan. The purchaser then has an option to negotiate a new loan with the lender (which may entail a different interest rate, a different term for the loan, and other changes), or to obtain a new loan from another lender to pay off the existing loan.

Indeed, a due on sale clause is a prominent part of Sunset's deal with Stell in this case. Paragraph 16 of the deed of trust provides in relevant part:

**Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6–years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein ... the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable in full.

To make sure that Stell did not overlook this provision, the paragraph is quoted in full in the promissory note.

Notably, Sunset makes no claim that it has invoked its option under the due on sale clause and declared the debt due and payable in full.[13] This provision gives Sunset no rights relevant to § 362(d)(4)(A).

In addition to providing for a loan to come due on the sale or transfer of collateral, lenders frequently negotiate a right to approve any transfer or sale of the collateral. In such a circumstance, § 362(d)(4) may properly authorize relief from stay if such approval is not obtained, and the other elements of § 362(d)(4) are satisfied. However, Stell had no contractual obligation to obtain Sunset's approval of a transfer of the property here at issue.

 The secured creditor's consent under § 362(d)(4) applies only if the secured creditor has a right based on contract or other applicable law to require consent or court approval for a transfer of property in which the creditor holds a security interest. Absent such a creditor right, § 362(d)(4)(A) cannot provide grounds for relief from the automatic stay.

In this case, there is no provision in either the note or the deed of trust requiring consent from Sunset for Stell to transfer or sell the property. Thus Sunset cannot obtain relief from stay under § 362(d)(4)(A).

## IV. Conclusion

The court concludes that Sunset has not shown that the property here at issue was transferred to the debtor as part of a scheme to delay, hinder and defraud creditors through the transfer of the property without Sunset's approval (or a court order). The evidence shows only that Stell transferred the property to the debtor (a preexisting corporation), and that the debtor filed its bankruptcy case four days later. The court finds this evidence insufficient to show that Stell engaged in a scheme to delay, to hinder and to defraud its creditors by this transfer.

The court further finds that, while Sunset did not consent to this transfer (and D & F did not obtain court approval for it), Sunset cannot invoke this clause of § 362(d)(4) because it had no right based on contract or law to approve the transaction.

In consequence, the court finds that relief from stay cannot be granted under § 362(d)(4). Nonetheless, the relief previously granted under § 362(d)(1) remains in force.

---

**13.** Sunset could have declared the note due and payable in full during the four-day window between the transfer to D & F and the filing of this bankruptcy case. Perhaps Sunset did not act because it was not aware of the transfer until after the filing. Alternatively, Sunset could seek relief from the automatic stay to invoke the due on sale clause. Sunset makes no attempt to obtain such relief.