**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-14-1338-DKiBr |
| | Bk. No. 6:12-35965 |
| MELISSA RODRIGUEZ LIRA, | |
| Debtor. | |
| MELISSA RODRIGUEZ LIRA, | |
| Appellant, | |
| v. | **MEMORANDUM**[1] |
| WELLS FARGO BANK N.A., | |
| Appellee. | |

Submitted Without Argument
on July 23, 2015

Filed - August 4, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Wayne Johnson,[2] Bankruptcy Judge, Presiding

Appearances: Appellant Melissa Rodriguez Lira, pro se, on brief; Conrad V. Sison and Shiva Delrahim Beck of Locke Lord LLP on brief for appellee.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[2] The Hon. Wayne Johnson heard the matter on appeal. The bankruptcy case was reassigned to the Hon. Scott H. Yun on July 21, 2014.

Before: DUNN, KIRSCHER and BRANDT,[3] Bankruptcy Judges.

The debtor, Melissa Rodriguez Lira ("Debtor"), appeals the bankruptcy court's order granting relief from stay, including an "in rem" provision under § 362(d)(4).[4] We AFFIRM.

## I. FACTUAL BACKGROUND

This appeal is all about the on-going efforts of the Debtor and her family to retain their residence property ("Property") in Rancho Cucamonga, California. On or about October 12, 2006, Debtor's husband Frankie R. Lira ("Frankie")[5] and her father-in-law Frank Lira, Jr. ("Frank, Jr.") purchased the Property. The purchase was funded by a loan ("Loan") from Soma Financial ("Lender") in the original principal amount of $960,000, with Frank, Jr. providing the $240,000 downpayment plus approximately $30,000 to cover closing costs.

Apparently, because of Frank, Jr.'s low credit score, the Loan was made to Frankie only in order to qualify for a 1% ARM loan. Repayment of the Loan was secured by a trust deed ("Trust Deed") on the Property. Section 18 of the Trust Deed provided that if the Borrower (Frankie) transferred any interest in the

---

[3] Hon. Philip H. Brandt, United States Bankruptcy Judge for the Western District of Washington, sitting by designation.

[4] Unless specified otherwise, all chapter, section and rule references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[5] We refer to members of the Lira family other than the Debtor by their first names for ease of reference. No disrespect is intended.

Property without the Lender's consent, the Lender, at its option, could accelerate the Loan. However, in an Addendum to Closing Instructions ("Addendum") for the Soma Financial/Frankie Loan transaction, Frankie as Borrower was "approved and authorized to transfer a beneficial interest to immediate family member(s) as governed by Section 18" of the Trust Deed. Accordingly, while Frankie apparently took title to the Property initially in his name only, he transferred title to the Property to himself and Frank, Jr. as Joint Tenants by grant deed recorded on October 27, 2006. At the same time, the Debtor and her mother-in-law Cynthia Lira ("Cynthia") transferred any interests that they might have in the Property to their respective husbands as "sole and separate property" by Interspousal Transfer Grant Deeds recorded on October 27, 2006.

As a result of economic hardships in light of the 2008 recession, Frankie filed a chapter 7 bankruptcy case on July 30, 2009, and received his discharge on January 12, 2010. Frank, Jr. followed his son into bankruptcy on November 9, 2009, and received his chapter 7 discharge on March 17, 2010.[6]

---

[6] Cynthia filed two chapter 7 bankruptcy cases as well (Case Nos. 6:11-bk-34330-SC and 6:11-bk-41440-MH). We exercise our discretion to take judicial notice of the electronic dockets in Cynthia's two bankruptcy cases. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). Case No. 6:11-bk-34330-SC, filed on July 28, 2011, was dismissed on August 17, 2011, for failure to file required documents. However, Cynthia received a discharge in Case No. 6:11-bk-41440-MH on June 13, 2012. Cynthia did not list the Property as an asset on her filed

(continued...)

3

In Frank, Jr.'s case, an order granting relief from stay to "Wells Fargo Bank, National Association as Trustee for the certificateholders of Structured Asset Mortgage Investments II Inc., Bear Stearns Mortgage Funding Trust 2006-AR5, Mortgage Pass-Through Certificates Series 2006-AR5" was entered on May 25, 2010. Since by that time, Frank, Jr. had received his discharge, the automatic stay already had terminated as to Frank, Jr. by operation of law (see § 362(c)(2)(C)), and the order was effective immediately on its entry. However, in order to allow Frank, Jr. time to complete a "workout plan," the order specifically provided that no foreclosure sale of the property could be conducted before July 23, 2010.

On March 29, 2012, the Trust Deed was assigned to the appellee Wells Fargo Bank, N.A. ("Wells Fargo"), by a corporate assignment ("Assignment") recorded on April 11, 2012.

On October 10, 2012, Frankie and Frank, Jr. transferred title to the Property by grant deed, recorded the same date, to "Frankie R. Lira and Melissa Lira, Married, as Joint Tenants and Frank Lira, Jr. and Cynthia L. Lira, Married, as Joint Tenants."

Four days later, the Debtor filed a chapter 13 bankruptcy petition. Her chapter 13 case ("Chapter 13 Case") was dismissed on November 6, 2012, for failure to file required documents.

Approximately two weeks later, the Debtor filed her chapter 7 petition, identifying the Property as her address, initiating a chapter 7 case ("Chapter 7 Case"). In her

---

[6](...continued)
Schedule A or as her residence on either of the petitions, but she did list the Property address as her mailing address.

4

Schedules A and D, Debtor listed the Property as having a value of $600,000, subject to a Trust Deed debt of $1,150,000, leaving a deficit of $550,000 unsecured. Since the Chapter 13 Case had been filed and dismissed within one year preceding her chapter 7 filing, the Chapter 7 Case was presumptively not filed in good faith, and if the Debtor did not obtain an extension of the automatic stay, the stay would terminate on the thirtieth day after her filing. See § 362(c)(3). The Debtor did not seek or obtain an extension of the stay.

The chapter 7 trustee filed a "no asset" report on January 2, 2013. However, our review of the docket in the Chapter 7 Case indicates that a discharge has not yet been entered.

On January 9, 2013, Bayview Loan Servicing, LLC ("Bayview") filed a motion for relief from stay in the Chapter 7 Case with respect to unscheduled property. Bayview alleged that it was entitled to stay relief "for cause" under § 362(d)(1) in that the Chapter 7 Case was filed in bad faith to delay, hinder or defraud Bayview and requested in rem relief under § 362(d)(4) because the filing of the Chapter 7 Case was "part of a scheme to delay, hinder, or defraud creditors that involved the transfer of all or part ownership of [property] without the consent of Bayview or court approval."[7] The Debtor filed a late response to the

---

[7] We refer to factual information from the Panel's prior unpublished disposition in BAP No. CC-13-1086-DPaKi, filed April 23, 2014, with respect to the Debtor's prior appeal of the bankruptcy court's order granting stay relief and in rem relief to Bayview.

5

motion.

The bankruptcy court granted Bayview's motion in all respects without a hearing, as under the local rules of the bankruptcy court for the Central District of California, LBR 9013-1(h), the failure to file a timely response to a motion is deemed consent to the relief requested in the motion, and Bayview had set forth a prima facie case in support of its motion. The Debtor appealed, and our prior Panel affirmed the bankruptcy court's relief from stay order in favor of Bayview by memorandum disposition filed on April 23, 2014.

On May 14, 2014, Wells Fargo filed a motion for relief from stay ("RFS Motion") in the Chapter 7 Case with respect to the Property. In the RFS Motion, Wells Fargo requested relief from stay for cause under § 362(d)(1), alleging that its interest in the Property was not adequately protected and that the Chapter 7 Case was filed in bad faith to hinder, delay and defraud Wells Fargo. Wells Fargo also requested relief from stay under § 362(d)(2), alleging that the Debtor had no equity in the Property, and in this Chapter 7 Case, the Property was not necessary to an effective reorganization. Wells Fargo further requested relief in terms of an "in rem" order under § 362(d)(4), alleging that the Debtor was engaged in a scheme to delay, hinder and defraud Wells Fargo through transfer of an interest in the Property without Wells Fargo's consent or court approval and through multiple bankruptcy filings affecting the Property. In the RFS Motion, Wells Fargo alleged that 65 payments on the Loan obligation had been missed, and the total amount of arrears was $293,601.86. The copy of the Loan promissory note included among

6

the exhibits to the RFS Motion included an endorsement without recourse from the Lender to Wells Fargo. Wells Fargo also attached a copy of the recorded Assignment as Exhibit 3 to the RFS Motion. Copies of both the Loan promissory note and the Assignment were authenticated by the declaration of Wells Fargo's Document Control Officer, Dianne French.

On June 6, 2014, the Debtor filed a response ("Response") in opposition to the RFS Motion. While the Response is wide-ranging, and the Debtor chides Wells Fargo for waiting so long after the Chapter 7 Case was filed to file the RFS Motion, the Debtor raised four arguments in opposition to the RFS Motion:

1) Wells Fargo had not established its standing to prosecute the RFS Motion.

2) Wells Fargo had not made an adequate showing to establish that the Debtor had filed the Chapter 7 Case in bad faith. Accordingly, "in rem" relief under § 362(d)(4) was not appropriate. Specifically in support of her argument (unfortunately, and perhaps critically, inartfully phrased) that the Liras did have consent to transfer interests in the Property among family members, the Debtor submitted the declaration of Frankie asserting that the Lender was aware of the projected transfer of an interest in the Property by Frankie to himself and Frank, Jr. as joint tenants. Frankie's declaration also authenticated an "Escrow Amendment" authorizing vesting of title to the Property in Frankie and Frank, Jr., in spite of the Loan being made to Frankie only, as Exhibit A, and the Addendum, as Exhibit B, to the Response.

3) In light of the termination of the automatic stay as to

7

the Debtor early in the Chapter 7 Case under § 362(c)(3), Wells Fargo's RFS Motion was moot. Considering that Frankie's and Frank, Jr.'s bankruptcies were filed and discharged years earlier and Debtor's explanation of her abortive chapter 13 filing, where was the "scheme" to delay or hinder? Since relief from stay had been granted in Frank, Jr.'s bankruptcy case in May 2010, no effort to foreclose on the Property had been initiated.

4) With property values having increased rapidly since the Chapter 7 Case was filed, the Property was necessary to an effective reorganization that could be effected through "some kind of a workout plan" that could be proposed "like in a chapter 20."

The Response was supported by the declarations of the Debtor, Frankie and Frank, Jr.

The bankruptcy court heard argument on the RFS Motion on June 17, 2014 ("Hearing"). After discounting the Debtor's argument as to absence of consent to transfers among Lira family members, counsel for Wells Fargo focused on the Liras' multiple bankruptcy filings. He noted that an in rem order already had been entered in the Chapter 7 Case against the Debtor with respect to a different property and a different creditor. In addition, he pointed out the evidence in the record as to Wells Fargo's standing and questioned the Debtor's standing to oppose the RFS Motion because there was no stay in place as to her. Wells Fargo was asking for relief from stay as to the estate and in rem relief as to the Property.

Frank, Jr. accompanied the Debtor at the Hearing, but the bankruptcy court refused to hear him as he was not an attorney.

8

The Debtor then argued that the bankruptcy filings of her husband and father-in-law were not relevant "since the bankruptcies were four years ago." She also argued that after she filed the Chapter 13 Case, she realized that she could not afford it and let it get dismissed. However, she had a legitimate reason to file the Chapter 7 Case to avoid garnishment by a judgment creditor. In addition, she contested Wells Fargo's allegation that the Loan was $293,000 in arrears. By her calculations, the arrears were "only $115,000." She concluded by asserting that once she obtained her discharge in the Chapter 7 Case, her intent was to get a modification of the Loan approved.

At the conclusion of the Hearing, the bankruptcy court announced its decision orally. It granted relief from stay "for the reasons set forth in the motion." It also granted relief under § 362(d)(4) "based on the unauthorized transfers of property and the filing of multiple bankruptcy cases . . . ."

On July 9, 2014, the bankruptcy court entered the order granting the RFS Motion, as submitted by counsel for Wells Fargo ("RFS Order").[8] The Debtor filed a premature Notice of Appeal on June 30, 2014 that became timely once the RFS Order was entered. See Rule 8002(a)(2).

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C.

---

[8] The RFS Order generally is consistent with the bankruptcy court's oral ruling, but it is incorrect in one respect in that the form order box for relief under § 362(d)(3) is checked. Relief from the stay under § 363(d)(3) was neither requested in the RFS Motion nor granted in the bankruptcy court's oral ruling.

§§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

### III. ISSUES

1) Did the bankruptcy court err in failing to hold a separate evidentiary hearing to consider the Debtor's argument that Wells Fargo had no standing to prosecute the RFS Motion?

2) Did the bankruptcy court err in effectively overruling the Debtor's standing objection?

3) Did the bankruptcy court abuse its discretion in granting the RFS Motion and granting in rem relief to Wells Fargo under § 362(d)(4)?

4) Did the bankruptcy court err in refusing to hear argument from Frank, Jr., thereby unfairly prejudicing the Debtor?

### IV. STANDARDS OF REVIEW

We review issues as to a party's standing de novo. Loyd v. Paine Webber, Inc., 208 F.3d 755, 758 (9th Cir. 2000); Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009). Whether a particular procedure comports with basic requirements of due process is a question of law which we review de novo. Alonso v. Summerville (In re Summerville), 361 B.R. 133, 139 (9th Cir. BAP 2007). De novo review requires that we consider a matter anew, as if no decision had been made previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988); B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 229 (9th Cir. BAP 2008).

We review an order granting relief from stay and/or in rem relief under § 362(d)(4) for an abuse of discretion. In re Kronemyer, 405 B.R. at 918.

10

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible or unsupported by evidence in the record. Trafficschool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011). Only if the bankruptcy court did not apply the correct legal standard or improperly applied it, or if its fact findings were illogical, implausible, or without support in inferences that can be drawn from facts in the record, is it proper to conclude that the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We may affirm the bankruptcy court's orders on any basis supported by the record. See ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999, 1004 (9th Cir. 2014); Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V. DISCUSSION

### A. Standing

Standing is "a jurisdictional requirement which remains open to review at all stages of the litigation." Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994). In addition to arguing that Wells Fargo lacked standing to bring the RFS Motion, the Debtor argues, for the first time in this appeal, that the bankruptcy court was required to hold a separate evidentiary hearing on the standing issue.

#### 1. The Debtor's argument regarding a hearing on standing

Although the Debtor objected to Wells Fargo's standing before the bankruptcy court, she never requested a separate hearing on the standing issue or argued that such a hearing was

11

necessary. Thus, we do not consider this issue, as it was not raised in the bankruptcy court. U.S. v. Real Prop. Located at 17 Coon Creek Rd., Hawkins Bar Cal., Trinity Cty., 787 F.3d 968, 979 (9th Cir. 2015) ("general practice" is not to consider arguments raised for the first time on appeal). Furthermore, both Wells Fargo and the Debtor filed declarations together with the RFS Motion and Response, respectively, and the bankruptcy court considered those declarations.

    2.    Wells Fargo's standing to bring the RFS Motion

Standing before a federal court is a matter of both "constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975); Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 906 (9th Cir. BAP 2011). We understand the Debtor to be challenging Wells Fargo's prudential standing to bring the RFS Motion.[9]

To satisfy the prudential standing requirement, a party must assert its own legal rights. Dunmore v. United States, 358 F.3d

---

[9] The Debtor's Opening Brief on Appeal does not clearly articulate any particular argument challenging Wells Fargo's standing, as distinct from the argument regarding the purported need for a separate hearing on standing. Ordinarily we do not consider any issue not clearly addressed in the appellant's opening brief. Law Offices of Neil Vincent Wake v. Sedona Inst. (In re Sedona Inst.), 220 B.R. 74, 76 (9th Cir. BAP 1998). In the spirit of construing a pro se appellant's arguments liberally, we address the underlying standing issue. See Shahrestani v. Alazzeh (In re Alazzeh), 509 B.R. 689, 694, n.5 (9th Cir. BAP 2014) (BAP interprets pro se pleadings liberally); Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 218 (9th Cir. BAP 2006) (same).

12

1107, 1112 (9th Cir. 2004). Section 362(d) permits a "party in interest" to request relief from the automatic stay. The Code does not define the term "party in interest." Instead, the bankruptcy court must determine on a case-by-case basis whether a movant is a party in interest, but the term can include any party that is impacted by the automatic stay. Brown v. Sobczak (In re Sobczak), 369 B.R. 512, 517-18 (9th Cir. BAP 2007).

Relief from stay proceedings do not "involve an adjudication on the merits . . . but simply determine whether the creditor has a colorable claim to the property of the estate." Biggs v. Stovin (In re Lux Int'l, Ltd.), 219 B.R. 837, 842 (9th Cir. BAP 1998). When a party moves for relief from stay to foreclose on real property, the determination whether the movant has a colorable claim, hence whether it is a party in interest, depends on "the minimum requirements for the initiation of foreclosures under applicable nonbankruptcy law[.]" In re Veal, 450 B.R. at 917 n.34.

CAL. CIV. CODE § 2924(a)(1) permits a "trustee, mortgagee, or beneficiary, or any of their authorized agents" to commence the nonjudicial foreclosure process. The record reflects that Wells Fargo was the assignee beneficiary under the Trust Deed, and the declaration of Dianne French authenticated the promissory note and the Assignment. Thus, it follows that Wells Fargo had a "colorable claim" to foreclose on the Property, which made it a party in interest under § 362(d). The bankruptcy court did not err in effectively overruling the Debtor's standing objection.

B.    The RFS Order

In the RFS Order, the bankruptcy court granted relief to

13

Wells Fargo under subsections (d)(1), (d)(2), (d)(3) and (d)(4) of § 362;[10] however, the Debtor takes issue only with the bankruptcy court's § 362(d)(4) ruling, in particular the granting of in rem relief.

Section 362(d)(4) permits the bankruptcy court to grant in rem relief from the automatic stay under certain circumstances. An order granting such relief, if recorded in compliance with applicable state law, is binding for a period of two years in any bankruptcy case filed by any person. See § 362(b)(20); see also First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 870 (9th Cir. BAP 2012). A creditor seeking relief under § 362(d)(4) must establish three elements. "First, debtor's bankruptcy filing must have been part of a scheme. Second, the object of the scheme must be to delay, hinder, or defraud creditors.[11] Third, the scheme must involve either (a) the transfer of some interest in the real property without the secured creditor's consent or

[10] As noted above, the mention of § 362(d)(3) in the RFS Order was an error, as relief under that section was neither requested in the RFS Motion nor granted at the Hearing. Since the Debtor makes no argument with respect to that aspect of the RFS Order, we do not discuss it further.

[11] Prior to December 22, 2010, the relevant language in § 362(d)(4) read "hinder, delay **and** defraud creditors" (emphasis added). The Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, 124 Stat. 3557 (2010)(effective December 22, 2010) replaced this language with "hinder, delay **or** defraud" (emphasis added). The mandatory form used for the RFS Order contained the outdated "and" language. However, we find that the bankruptcy court's decision was not an abuse of discretion under the currently applicable, less demanding standard.

court approval, or (b) multiple bankruptcy filings affecting the property." Id.

The bankruptcy court correctly identified these elements in its RFS Order, and found that each was satisfied. We now consider whether the bankruptcy court's factual determinations were adequately supported by inferences that could be drawn from facts in the record.

1.   Part of a scheme

Section 362(d)(4) does not define the term "scheme," but it has been held in this context to refer to "an artful plot or plan." In re Duncan & Forbes Dev., Inc., 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006), quoting Black's Law Dictionary 1372 (8th ed. 2004). Generally, a bankruptcy court must rely on circumstantial evidence to infer the existence of a scheme, as direct evidence usually is not available. In re Duncan & Forbes Dev., Inc., 368 B.R. at 32. In paragraph 9 of the RFS Order, the bankruptcy court determined that the filing of the Chapter 7 Case was part of such a scheme.

The evidence before the bankruptcy court showed that a total of four members of the Lira family had at various times held a title interest in the Property. Each of those family members had filed at least one bankruptcy petition, and three of them (Frankie, Frank, Jr. and the Debtor) had included the Property in their bankruptcy schedules. Finally, the Debtor filed her first bankruptcy case (the Chapter 13 Case) a matter of days after she obtained a title interest in the Property, and her second (the Chapter 7 Case) just two weeks after the Chapter 13 Case was dismissed.

15

On the other hand, the Debtor submitted declarations from Frankie and Frank, Jr., in which they denied that their bankruptcy filings were part of a scheme to delay, hinder or defraud any creditor. The Debtor's declaration contains the same statement with regard to her own bankruptcy filings. The Debtor also argues that the length of time that passed between Frankie and Frank, Jr.'s filings and her own Chapter 13 Case pointed to the absence of a scheme.

Although the evidence was far from unequivocal in establishing the existence of an "artful plot," we cannot conclude that the bankruptcy court's determination was illogical, implausible or unsupported by inferences that can be drawn from the record.

2. Delay, hinder or defraud

It does not appear that the bankruptcy court based its decision on a finding that the Debtor intended to defraud creditors, and we do not understand Wells Fargo to argue that any fraud took place. However, the applicable statutory language is in the disjunctive and requires only that one of three elements (delay, hinder or defraud) be established before in rem relief can be granted.

To "delay" is to "postpon[e] or slow[]." In re Dorsey, 476 B.R. 261, 268 (C.D. Cal. 2012), quoting Black's Law Dictionary (9th ed. 2009). Similarly, to "hinder" is "to slow or make difficult;" "to hold back;" or "to impede, delay, or prevent." Black's Law Dictionary (10th ed. 2014). Thus, the two terms are essentially synonymous. See also In re Duncan & Forbes Dev., Inc., 368 B.R. at 34 (noting that these terms "have the

16

same meaning" as used in § 362(d)).[12]

The record before the bankruptcy court supported its conclusion that the Chapter 7 Case was part of a scheme to delay or hinder Wells Fargo. Wells Fargo's efforts to foreclose on the Property have been postponed, delayed and impeded by each of the bankruptcy cases. Although the Debtor offers alternative explanations for her bankruptcy filings, the bankruptcy court was not required to accept those explanations as determinative in the matter before it.

### 3. Transfer of property without creditor consent

There appears to be no dispute that an interest in the property was transferred to the Debtor, and the Debtor does not suggest that the transfer was made with court approval. The Debtor does, however, dispute the bankruptcy court's determination that this transfer was without the consent of the creditor. In support of this contention, the Debtor points to the Addendum permitting Frankie to transfer title in the property to "immediate family member(s)."

The language of the Addendum shows that the Lender gave its consent to **some** transfer of interest in the property, specifically to the transfer between Frankie and Frank, Jr. at

[12] The bankruptcy court in Duncan & Forbes went on to conclude that, for purposes of § 362(d), the delay or hindrance must be shown to be unlawful. 368 B.R. at 34. We agree with the bankruptcy court in Dorsey and conclude that no such showing is required by the statutory language. 476 B.R. at 268 n.3. We also note that Duncan & Forbes construed the pre-2010 version of the statute, which required a showing of intent to "delay, hinder and defraud."

17

the time of closing.[13]  However, the Debtor submitted no evidence that either the Lender or Wells Fargo approved any subsequent transfers of interest in the property, including the transfer to the Debtor made before the filing of the Chapter 13 Case. Although the Debtor argued before the bankruptcy court, and continues to argue on appeal, that her beneficial interest in the Property had existed since 2006, her own exhibits submitted with the Response to the RFS Motion show otherwise.  The Interspousal Transfer Grant Deed executed in 2006 purported to transfer the Property **from** the Debtor **to** Frankie, as his sole and separate property.  The Debtor did not obtain an interest in the Property until October 10, 2012.

This record provided support for the bankruptcy court's determination that the Property had been transferred without Wells Fargo's consent.  That determination was not clearly erroneous.

4.    Multiple bankruptcy filings affecting the property

As noted above, three members of the Lira family have filed a total of four bankruptcy cases affecting the property.  The Debtor filed two bankruptcy cases within a period of less than two months.  The bankruptcy court did not abuse its discretion when it determined that the Chapter 7 Case was one of "multiple bankruptcy filings" affecting the Property.

---

[13] The relevant language from the Addendum is as follows: "**AT THE CLOSE** AND OUTSIDE OF THE ABOVE REFERENCED ESCROW BARROWER [sic] IS APPROVED AND AUTHORIZED TO TRANSFER A BENEFICIAL INTEREST TO IMMEDIATE FAMILY MEMBER(S) AS GOVERNED BY SECTION 18. AT PAGE 10 OF DEED OF TRUST" (emphasis added).

18

## C. The bankruptcy court's refusal to hear from Frank, Jr.

The Debtor argues that the bankruptcy court's refusal to hear from Frank, Jr. at the Hearing was prejudicial and unconstitutional. To the extent the Debtor argues that she had a constitutional right to have Frank, Jr. speak on her behalf, we reject the argument.[14]

Rule 9010(a) governs representation and appearances in bankruptcy courts by debtors. A debtor may "appear in a case . . . and act either in the [debtor]'s own behalf or by an attorney authorized to practice in the court[.]" Rule 9011-2(b) of the Local Bankruptcy Rules for the Central District of California provides that an individual appearing pro se "must appear personally for such purpose." The bankruptcy court's decision to preclude Frank, Jr. from speaking on the Debtor's behalf comported with these rules. The Debtor has cited no authority for the proposition that she had a constitutional right to be represented before the bankruptcy court by a layperson, and we perceive no basis for recognizing such a right. The bankruptcy court did not abuse its discretion in refusing to allow Frank, Jr. to speak on the Debtor's behalf.

## VI. CONCLUSION

Based on the foregoing, we conclude that the bankruptcy

---

[14] At the Hearing, the bankruptcy court understood Frank, Jr. to be appearing on behalf of the Debtor. In her brief, the Debtor argues that Frank, Jr. and Frankie should have been permitted to speak because they were parties in interest. To the extent the Debtor argues that Frank, Jr. and Frankie themselves were prejudiced, we do not consider the argument. Frank, Jr. and Frankie are not parties to this appeal.

19

court did not err in effectively overruling the Debtor's standing objection. We further conclude that the bankruptcy court did not abuse its discretion in granting the RFS Motion, including its granting of in rem relief to Wells Fargo. Finally, we conclude that the bankruptcy court did not err in refusing to hear argument from Frank, Jr. at the Hearing. We AFFIRM.